UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-30136-KPN

| | |
|---|---|
| DONOVAN BROTHERS, INC., and ELSIE M. LAFOND, <br><br>     Plaintiffs <br><br> v. <br><br> JOSEPH FONTAINE, JOANNE HEBERT and ROBERT W. PIKE, JR., as they are the Zoning Board of Appeals of the Town of Montgomery, and ELWIN R. CLARK, JR., as he is the Building Inspector & Zoning Enforcement Officer of the Town of Montgomery, <br><br>     Defendants | OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT |

      Now come the defendants in the instant matter ("Defendants") and hereby submit their Opposition to Plaintiffs' Motion to Amend Complaint. The Defendants specifically object to the addition of the members of the Board of Selectmen of the Town of Montgomery ("Selectmen") as parties to the instant dispute, and to inclusion in the Complaint of the allegations contained in paragraphs 30 and 34-40 of the Plaintiffs' Amendment to Complaint ("Amended Complaint"). They do not object to the remainder of the Amended Complaint. As reasons therefore, the Defendants state that such additions and allegations fail to state a claim upon which relief can be granted, thus rendering the amendment with respect to such additions and allegations futile, and requiring denial of the Plaintiffs' Motion to extent set forth above. As further reasons therefore, the Defendants state as follows.

INTRODUCTION

In their Complaint, filed with the Hampden Superior Court on or about May 6, 2005, the Plaintiffs made the following two claims: 1) that an order issued to the plaintiff, Elsie LaFond, by the defendant, Building Inspector for the Town of Montgomery ("Building Inspector"), to cease operation of a gravel pit in the Town owned by Ms. LaFond ("Gravel Pit"), as well as a decision of the defendants, members of the Town of Montgomery Zoning Board of Appeals ("Board of Appeals") upholding the Building Inspector's order, were arbitrary and capricious or based upon a legally untenable ground; and 2) that the cease and desist order and the Board of Appeal's decision constituted a denial of the Plaintiffs' rights to equal protection under the United States and Massachusetts Constitutions. The first claim arose under State law, specifically G.L. c.40A, §17, which allows appeals by aggrieved persons of decisions of a zoning board of appeals. Because the second claim arose under both Federal and State law, the Defendants removed the case to this Court.

The Plaintiffs now seek to amend their Complaint to add, in their words, "additional facts which establish that the wrongful issuance of the said Cease and Desist Order was based on impermissible considerations of residency, and/or a malicious or bad faith intent to injure the Plaintiffs by the Defendants and certain government officials who are superior (and appointing officials) of the Defendants with the Town of Montgomery." See Plaintiffs' Motion to Amend Complaint ("Motion to Amend"), ¶ 2. An examination of the Plaintiffs' proposed amendment discloses that the "certain government officials" are in fact the three current members of the Town's Board of Selectmen, whom the Plaintiffs wish to add as defendants.

As grounds for adding the Selectmen as defendants, the Plaintiffs allege that: a) one of the Selectmen, Charles Peckham, owns and operates a gravel pit in the Town; and b) another

Selectman, Daniel Jacques, owns property abutting the Plaintiffs' Gravel Pit, and has allegedly told the plaintiff, Donovan Bros., that the gravel pit operation is not allowed in the Town of Montgomery pursuant to the Town's zoning bylaws, but that he would not oppose the continued operation if a buffer zone was sold to abutters including himself, and if the Plaintiffs agreed to certain conditions of operation. From such alleged facts, which the Plaintiffs characterize as "acts and conduct," the Plaintiffs construe an attempt to "interfere . . . with the exercise of the Plaintiffs' constitutionally protected rights." The only such right identified in, or that can reasonably be inferred from the Amended Complaint, is the right to equal protection. In sum, the Plaintiffs essentially seek, by way of their Motion to Amend, to implicate the Selectmen as among those persons whose actions deprived the Plaintiffs' of their equal protection rights.[1] The Plaintiffs conspicuously do not allege how the alleged acts of the Selectmen deprived them of their equal protection rights. Nor do they allege that any member of the Board of Selectmen ever acted in such a manner as to cause either the Building Inspector or the Board of Appeals to deprive the Plaintiffs of such rights.

## ARGUMENT

Once a responsive pleading has been served, as here, court approval is required to amend a complaint. See Fed.R.Civ.P. 15(a). Although leave to amend is to be freely given "when justice so requires," id., such leave must be denied when the proposed amendment is futile, or would serve no legitimate purpose. See Hatch v. Department for Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001). When leave to amend is sought before discovery is complete, as here, a "futile" amendment is an amendment that does not put forth a cognizable

---

[1] The Amended Complaint also adds a claim for damages pursuant to 42 U.S.C. §1983. The Defendants do not oppose the addition of this claim to the Complaint provided it applies to the actions of the Defendants only.

3

claim, i.e., an amendment that will not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Id., citing, Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 421 (6th Cir. 2000).

In their Amended Complaint, the Plaintiffs attempt to supplement their already existing equal protection claim by alleging "acts" of certain of the Selectmen that purportedly deprived the Plaintiffs of their equal protection rights. No other claim against the Selectmen, or based on the Selectmen's alleged acts, is made out.[2] None of those alleged acts, even if assumed to be true, establish any of the elements of a *prima facie* equal protection claim against the Selectmen.

Plaintiffs alleging a violation of their equal protection rights as a result of improper or selective enforcement of local regulations must plead: 1) selective treatment compared to others similarly situated; and 2) that such treatment was based upon impermissible considerations such as race or religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure. See Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortgage Finance Corp., 246 F.3d 1, 7 (1st Cir. 2001), citing, Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995); Yerardi's Moody Street Restaurant & Lounge v. Board of Selectmen of the Town of Randolph, 932 F.2d 89 (1st Cir. 1991) (noting that, in the absence of "racial, religious or speech discrimination," a plaintiff must show that the defendant acted maliciously or with bad faith intent to injure). The Plaintiffs allege in their Amended Complaint that both the Defendants and the Selectmen acted upon "impermissible considerations of residency, and/or malicious or bad faith intent to injure the Plaintiffs."

### A. THE "RESIDENCY REQUIREMENT" ALLEGATION

Taking the residency allegation first, it fails to make out an equal protection claim as pled. In paragraph 35 of the Amended Complaint, the Plaintiffs attempt to establish that they

---

[2] The Plaintiffs' §1983 claim, which is new to the Amended Complaint, is dependent upon their equal protection claim, equal protection being the sole "right secured by the Constitution or laws of the United States" of which the Plaintiffs were allegedly deprived. See 42 U.S.C. §1983; Collins v. Nuzzo, 244 F.3d 246, 250 (2001).

4

have been treated differently from others similarly situated, but contradict themselves by stating that they are the only non-resident owners/operators of a gravel pit in the Town, <u>except</u> for one other gravel pit. By this allegation alone, taken at face value, the Plaintiffs have admitted that a residency requirement cannot be the grounds for the alleged disparate treatment, as both similarly situated <u>and</u> dissimilarly situated gravel pit owners were treated differently from the Plaintiffs. The Plaintiffs then go on to simply conclude, based on the ownership allegations in paragraph 35 and without other supporting facts of any kind, that residency is the basis for the issuance of the cease and desist order. They allege absolutely no facts even tending to show that the Building Inspector or the Board of Appeals were aware of the Plaintiffs' residence addresses, much less actually <u>relied</u> on the Plaintiffs' residency status in taking the actions alleged.[3] As stressed by this Circuit time and again in connection with equal protection cases, conclusory allegations such as this are insufficient to satisfy minimum pleading requirements. <u>See</u> <u>Barrington Cove</u>, 246 F.3d at 5, and cases cited; <u>Glassman</u> v. <u>Computervision Corp.</u>, 90 F.3d 617, 629 (1st Cir. 1996) ("[I]t is the plaintiff's responsibility to plead factual allegations, not hypotheticals.").[4] Based on the Plaintiffs' allegations, it is equally as likely that the actions of the Building Inspector and the Board of Appeals are based on the color of the Plaintiffs' hair as on the "residency" of the Plaintiffs, and far more likely that they were in fact based on the Town's zoning bylaws, which the Building Inspector and the Board of Appeals are required by law to interpret and apply. <u>See</u> <u>infra</u>, p. 10.

---

[3] Nor do the Plaintiffs allege what the supposed "residency requirement" is, e.g., residency in the Town, residency in the State, full vs. part-time residency, personal residency vs. location of business.

[4] This requirement is the requirement set forth in Fed.R.Civ.P 8, <u>not</u> the heightened pleading requirement for civil rights cases abandoned by the First Circuit in <u>Educadores Puertorriqueños en Acción</u> v. <u>Hernández, 367 F.3d 61 (1st Cir.2004).</u>

Adding the Selectmen as plaintiffs adds nothing to the residency allegation. As with the Building Inspector and the Board of Appeals, the Plaintiffs simply fail to allege any action taken by the Selectmen related to the residency of the Plaintiffs. In sum, the "residency requirement" is a fictional red herring that, even assuming the Plaintiffs' factual allegations concerning residency of gravel pit owners/operators to be true, has no demonstrable connection to the actions of the Defendants or Selectmen, and should not be added to the Plaintiffs' Complaint.[5]

### B.    THE MALICE/BAD FAITH ALLEGATION

The Plaintiffs have also failed to properly outline a claim for unequal treatment based on "malicious or bad faith" actions. Such cases are infrequent, and the malice/bad faith standard must be scrupulously met. Rubinovitz, 60 F.3d at 911. In such a case, a plaintiff must allege facts sufficient to show that the deprivation of equal protection was the result of a "malicious orchestrated campaign causing substantial harm," undertaken for reasons unrelated to a legitimate objective. Id. at 912 (emphasis provided). It must be pled that the defendants unlawfully and intentionally treated the plaintiffs differently from others similarly situated. Coyne v. City of Somerville, 972 F.2d 440, 445 (1st Cir. 1992). In Rubinovitz, evidence that: 1) a municipal official was personally hostile to a homeowner who had evicted the official's friend; 2) the official had pressured the Board of Health repeatedly to bring enforcement actions against a homeowner, and that her contact with other local regulatory officials regarding the property

---

[5]  Nor, contrary to the Plaintiffs' allegation, is residency one of the "impermissible considerations" identified by this Circuit as requiring heightened scrutiny in an equal protection analysis. See, e.g., Barrington Cove, 246 F.3d at 7. Residency as a basis for classification has been reviewed many times by Federal courts, and is routinely analyzed under the rational basis test. See, e.g., Nordlinger v. Hahn, 505 U.S. 1, 10-11 (1992) (holding that a classification based on length of residency was not an "inherently suspect classification" warranting strict scrutiny); Martinez v. Bynum, 461 U.S. 321, 328 n.7 (1983) (noting that "there is nothing invidiously discriminatory about a bona fide residence requirement if it is uniformly applied," the Court went on to state that unless it acts to deny "a fundamental right protected by the Constitution," a residency requirement implicates no "suspect" classification, and therefore is not subject to strict scrutiny); McCarthy v. Philadelphia Civil Serv. Comm'n, 424 U.S. 645 (1976) *(per curiam)*(upholding as permissible under the equal protection clause a residency requirement for municipal employment).

was followed shortly thereafter by enforcement actions against the homeowner accompanied by expressions of hostility; and 3) the official had tried to interfere in the homeowner's attempts to hire a private contractor, was <u>barely</u> enough to survive a motion for summary judgment on an equal protection claim based on malice. <u>Rubinovitz</u>, 60 F.3d. at 912.

The Plaintiffs' allegations conspicuously lack any of the hallmarks of a minimum malice or bad faith equal protection claim identified in <u>Rubinovitz</u>. There is no allegation of <u>any</u> malice on the part of the Building Inspector or the Board of Appeals, the parties that allegedly took the actions of which the Plaintiffs complain. As courts of this Circuit have noted several times in various forms, "the arbitrariness of a law enforcement decision is not, without more, sufficient to state an equal protection claim." <u>Pariseau</u> v. <u>City of Brockton</u>, 135 F.Supp. 257, 263 (D.Mass. 2001); <u>see also</u> <u>Barrington Cove</u>, 246 F.3d at 10-11 (noting, in upholding a Rule 12(b)(6) motion to dismiss, "the mere fact that appellees may have violated or abused federal or state regulatory regimes . . . has no direct bearing on whether appellees violated [the appellant's] equal protection rights); <u>Baker</u> v. <u>Coxe</u>, 230 F.3d 470, 474 (1st Cir. 2000) (noting the "marked difference between the inevitable misjudgments, wrongheadedness, and mistakes of local government bureaucracies and the utterly unjustified, malignant, and extreme actions of those who would be parochial potentates); <u>Yerardi's</u>, 932 F.2d at 93 (noting that malice cannot simply be inferred from unequal treatment).

More importantly, for purposes of the Motion to Amend, while the Plaintiffs allege that Selectmen Daniel Jacques made statements demonstrating his opposition to the Gravel Pit as presently operated, they fail to allege even one instance of Mr. Jacques, or any other Selectman, even <u>speaking</u> to the Building Inspector or the Board of Appeals concerning the Gravel Pit, much less a "malicious orchestrated campaign" attempting to influence the actions of those officials.

7

The Plaintiffs admit that their equal protection claims arise directly from the cease and desist order issued by the Building Inspector, and the decision of the Board of Appeals upholding that order, but, as with the fictional "residency requirement," fail to allege <u>any</u> connective thread between the Selectmen they wish to add as defendants, and the actions of the Building Inspector and the Board of Appeals.  In sum, they do not allege, as they must, any action by the Selectmen that, viewed in a light most favorable to the Plaintiffs, could reasonably be said to have <u>caused</u> the unequal treatment of which they complain.

      Instead, they apparently intend to rely on the unstated hypotheses that because Selectman Peckham also owns a gravel pit, and because Selectman Jacques apparently does not want an expanding gravel removal operation in his back yard, those Selectmen, in some unexplained way, caused the Building Inspector and Board of Appeals to take the actions they did.  As noted above, hypotheses, particularly unstated hypotheses, do not satisfy the minimum pleading requirements of Fed.R.Civ.P. 8, and thus fail to make out a cognizable claim.

      In any event, it is not only unreasonable, but patently absurd, to infer on the facts alleged that Selectman Peckham took any action to bring about the interpretation of the zoning bylaws made by the Building Inspector and the Board of Appeals--that gravel pits are not an allowed use <u>anywhere</u> in the Town--when that interpretation could so easily be turned against him.[6]  Nor is it any more reasonable to infer that Selectman Jacques' objections to the Gravel Pit necessarily resulted in such actions on his part.  The only reasonable inference, assuming for purposes of this Opposition that the allegations concerning Mr. Jacques' actions are true, is that Mr. Jacques acted as a private homeowner concerned about the expanding gravel operation in his back yard. Importantly, the Plaintiffs make no allegation that Mr. Jacques ever acted <u>as a Selectman</u> to

---

[6] The inference is particularly absurd in light of the alleged fact that, prior to the instant matter, the Town had taken no enforcement action against any gravel pit in the Town.  <u>See</u> Amended Complaint, ¶ 31.

oppose the Gravel Pit, or even represented to the Plaintiffs that he <u>intended</u> to so act, but simply state that he <u>was</u> a Selectmen at the time he acted as alleged. To find that a zoning enforcement action undertaken by the proper authorities against an unlawful use of property abutting that of a Selectman or other public official, coupled with statements of the official <u>acting as a private party</u> that he objected to such use, together make out a cognizable claim of unequal treatment <u>against the official</u>, would contradict all law in this Circuit, and stretch the requirements of notice pleading far beyond recognition. The Plaintiffs' motion to add the Selectmen to the Complaint as defendants, together with their motion to amend their Complaint to include the allegations found in paragraphs 30 and 34-40 of the Amended Complaint, must accordingly be denied.[7]

  C.  <u>PLAINTIFFS AS A CLASS OF ONE</u>

  The Supreme Court has recognized so-called "class of one" cases in limited circumstances. <u>See, e.g.</u>, <u>Village of Willowbrook</u> v. <u>Olech</u>, 528 U.S. 562, 120 S.Ct. 1073 (2000). However, such a claim is only available where the plaintiffs allege, with sufficient specificity, that they have been "<u>intentionally</u> treated differently from others <u>similarly situated</u> and that there is <u>no rational basis</u> for the difference in treatment." <u>Id.</u> at 564 (emphasis added). Applying that standard in the case of <u>Lakeside Builders</u> v. <u>Town of Franklin Planning Board</u>, C.A. No. 00-CV-12170-GAO, 2002 WL 31655250, at *4 (March 21, 2002) (attached hereto as Exhibit A) this Court noted that the "no rational basis" standard requires the plaintiff to allege that the defendant deliberately sought to deprive him of equal protection "for reasons of a personal or improper nature." In the words of <u>Educadores,</u> the Plaintiffs must allege, at a minimum, "who did what to

---

[7] The Plaintiffs also appear to allege in their Motion to Amend (but do not expressly allege in their Amended Complaint) that the Selectmen appoint the Building Inspector and the Board of Appeals, and apparently hope by this allegation to suggest the inference that the Building Inspector and the Board of Appeals acted in accord with the wishes of the Selectmen in order to preserve their positions. For all the reasons set forth above, such unsupported and unstated hypotheses and speculation are insufficient to make out an equal protection claim.

whom, when, where, and why -- although why, when why means the actor's state of mind, can be averred generally." Educadores, 367 F.3d at 68.

Although the Plaintiffs do not directly refer to the elements of an Olech-style equal protection claim, the Defendants will address such a potential claim briefly in order to forestall any argument that such a claim has nonetheless been properly made out by way of the Amended Complaint. As with the malice/bad faith equal protection claim expressly pursued by the Plaintiffs, the Plaintiffs' Amended Complaint is devoid of any factual support for the contention that the Defendants or the Selectmen treated the Plaintiffs differently "intentionally," arbitrarily, and "without a rational basis." Focusing on the alleged acts of the Selectmen as they concern the triggering actions of the Building Inspector and the Board of Appeals, the Plaintiffs simply do not allege who did what to whom, when or where. While they hint, albeit illogically, that Selectmen Jacques and Peckham had reason to act for improper reasons, they do not allege that any such act took place.

Nor do they offer any facts to contradict the rational bases for the Building Inspector's and Board of Appeals' actions starkly evident in the original Complaint: the Building Inspector issued the cease and desist order in response to a written request of the Dennis and Joann Page, see Complaint, ¶12, and the Board of Appeals acted upon the appeal of the order brought by the Plaintiffs. See Complaint, ¶¶ 17-19; Lakeside, supra, at *4. Such actions were mandated by Massachusetts law. The Building Inspector acted pursuant to G.L. c.40A, §7, which requires him to respond to a written request for enforcement of the zoning bylaws, in writing and within 14 days, by detailing his action or the reasons for his refusal to act. The Board of Appeals acted pursuant to G.L. c.40A, §§8 & 15, which requires it to hear and act within 100 days on appeals from actions of the Building Inspector. In sum, as with their asserted equal protection claim

10

under the malice/bad faith prong, the Plaintiffs fail to allege even the skeletal outline of a viable equal protection claim against the Selectmen under the <u>Olech</u> test.

## CONCLUSION

For all of the foregoing reasons, the Defendants respectfully request that the Court deny the Plaintiffs' Motion to Amend the Complaint as it adds the Selectmen as parties, and as it adds paragraphs 30 and 34-40.

                DEFENDANTS,

                By their attorneys,

                /s/ Jonathan D. Eichman
                Joel B. Bard (BBO# 029140)
                Jonathan D. Eichman (BBO# 641227)
                 Kopelman and Paige, P.C.
                31 St. James Avenue
                Boston, MA 02116
                (617) 556-0007

258980/MONT/0007

Westlaw:

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 31655250 (D.Mass.)

(Cite as: 2002 WL 31655250 (D.Mass.))

Page 1

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Massachusetts.
LAKESIDE BUILDERS, INC. and MASTRO CO., INC., Plaintiffs
v.
PLANNING BOARD OF THE TOWN OF FRANKLIN, Town of Franklin, James H. Nash, Douglas M. Morin, and David Lamberto, Defendants
No. CIV.A. 00-12170-GAO.

March 21, 2002.

MEMORANDUM AND ORDER

OTOOLE, DJ.

*1 The plaintiffs, Lakeside Builders, Inc. ("Lakeside") and Mastro Co., Inc. ("Mastro") bring this action under 42 US.c. § 1983, alleging that the defendants, Planning Board of the Town of Franklin ("Board") and the Town of Franklin, violated their Fourteenth Amendment rights to due process and equal protection under the law. [FNl] The Planning Board of the Town of Franklin and the Town of Franklin have moved for judgment on the pleadings. The motion is GRANTED. [FN2]

> FNI. Claims asserted against the individual defendants Nash, Morin and Lamberto have been dismissed pursuant to Fed.R.Civ.P.41(a)(I)(ii).

> FN2. The defendants assert several grounds in support of their motion, but it is not necessary to address all of them. For the reasons set forth in this opinion, the complaint does not adequately allege a claim for denial of due process or equal protection to justify relief.

*Background*

In September 1997, Lakeside submitted a plan to the Board to build a subdivision on land owned by Mastro in Franklin, Massachusetts. The plan contained elements that did not comply with the Board's Subdivision Rules and Regulations. In particular, the plan included a subdivision road that was approximately 1200 feet in length and ended in a cul-de-sac. The planned road thus exceeded the 600 feet maximum length for a dead-end road allowed under the regulations by approximately 600 feet. The plaintiffs requested that the Board waive compliance with the dead-end street length regulation as well as regulations regarding· sidewalks, intersections, and the center lines of streets. On October 20, 1997, the Board denied Lakeside's waiver requests. The plaintiffs appealed the Board's decision to the Massachusetts Land Court and also pursued a "regulatory taking" claim there. After trial, the Land Court entered judgment for the defendants upholding the Board's action. An appeal from the Land Court's decision is currently pending in the Massachusetts courts.

In the Land Court case, the parties stipulated to certain facts that the Land Court then adopted and relied on in its decision. *See* Defs.' Mot. for Judgment on the Pleadings, Ex. 1, Stipulation of Facts. In particular, the parties stipulated that prior to October 20, 1997, the date of the Board's denial of the plaintiffs' application, the Board had granted waivers for plans having dead-end roads longer than 600 feet for twenty-one other subdivision developments. *Id.* Ex. 1 ~ 25. However, the Board also denied such waivers on four occasions, including the plaintiffs' application. The first denial was in January 1997, about nine months before the plaintiffs' application was denied, and two others occurred after the denial of the plaintiffs'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 2

Not Reported in F.Supp.2d, 2002 WL 31655250 (D.Mass.)

(Cite as: 2002 WL 31655250 (D.Mass.))

application. *Id.,* Ex. 1 ~ 26. In addition, the Land Court found, and it appears to be undisputed here, that the Board approved a master plan that established as a goal for future planning "more efficient circulation patterns, greater connectivity between subdivisions, improvements to conditions presenting safety hazards, and reduced emergency response times." *See id.* Ex. 2, Land Court Decision ~ 43, at 15.

Three years after the Board's decision, in October 2000, the plaintiffs filed their complaint in this case. They allege that although the Board had consistently waived compliance with the relevant subdivision regulations for land developers and owners prior to the plaintiffs' application, the Board intentionally and without a rational basis denied their waiver request. The difference in treatment amounts, the plaintiffs claim, to a denial of equal protection guaranteed by the Fourteenth Amendment. [FN3]

> FN3. Although the complaint also alleges a denial of due process, the plaintiffs' arguments in response to the defendants' motion for judgment on the pleadings have been limited to the equal protection theory. They have not articulated or supported the viability of a separate theory of denial of due process. The plaintiffs do not complain of procedural defects, so it must be presumed that their reference in the complaint to a denial of due process was intended to allege a denial of substantive due process. In general, to establish a denial of substantive due process by a governmental entity such as the Board, the plaintiffs would be required to allege and prove action that was so sufficiently arbitrary or unfair that it was "truly horrendous" or could be said to "shock the conscience." *See Collins* v. *Nuzzo,* 244 F.3d 246, 250-51 (1st Cir.2001). The allegations of the complaint do not approach satisfying that standard.

*Standard of Review*

*2 In reviewing a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c), a court must accept as true the well-pleaded averments of the complaint and draw all reasonable inferences in the plaintiffs' favor. *See Feliciano* v. *State of Rhode Island,* 160 F.3d 780, 788 (1st Cir.1998); *Rivera-Gomez v. Adolfo de Castro,* 843 F.2d 631, 635 (1st Cir.1988). Courts need not credit conclusory statements or merely subjective characterizations, but rather plaintiffs must set forth in their complaint specific, nonconclusory factual allegations regarding each material element necessary to sustain recovery. *Coyne* v. *City of Somerville,* 972 F.2d 440, 444 (1st Cir.1992); *Dartmouth Review* v. *Dartmouth Col!.,* 889 F.2d 13, 16 (1st Cir.1989). When evaluating a motion to dismiss for failure to state a claim or for judgment on the pleadings, a court may properly consider public documents from earlier state court cases without converting the motion into one for summary judgment. *See Henson* v. *CSC Credit Servs., 29* F.3d 280, 284 (7th Cir.1994); *Watterson v. Page,* 987 F.2d 1, 3-4 (1st Cir.1993).

*Discussion*

The plaintiffs seek to take advantage of the Supreme Court's recognition of the possibility of "class of one" equal protection claims where a single plaintiff has been intentionally treated differently from all others similarly situated without any rational basis for the difference in treatment. *See Village of Willowbrook* v. *Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Allegheny Pittsburgh Coal Co.* v. *County Comm'n of Webster County,* 488 U.S. 336, 345-46, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989). The plaintiffs are correct that such claims may be successfully advanced. They are incorrect in asserting that they have successfully presented such a claim here.

I. *The "Similarly Situated" Standard*

The complaint alleges that "[w]aivers with respect to the maximum length of a dead-end way were granted by the Planning Board ... for other property owners and land developers on every occasion prior to the submission of Plaintiffs' Plan to the Planning

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 31655250 (D.Mass.)

(Cite as: 2002 WL 31655250 (D.Mass.))

Board." CompI. ~ 19. The complaint also avers, "Every other similarly situated property owner and land developer who had previously requested a waiver with respect to the maximum length of a dead-end way was granted such waiver." CompI. ~ 20.

To begin with, these allegations are contradicted by the stipulated, and thus undisputed, fact that the Board denied approval for a defmitive plan with a non-conforming dead-end street in January 1997, nine months before Lakeside's plan was denied. So, the allegation that *every* other previous applicant had been granted a waiver is not accurate. In addition, the parties' stipulation in the Land Court case recognizes that two other waiver requests were denied by the Board after the denial of the plaintiffs' request. It appears that the plaintiffs are not in a "class of one" but a "class of four." *See Olech,* 528 U.S. at 564, 120 S.Ct. at ---- & n. * (noting that plaintiff might be a member of a "class of five"). While this has no effect on the availability of a traditional equal protection analysis, *see id.* at 565, it is pertinent in understanding the factual predicate relied on by the plaintiffs to establish their proposition that they were treated unequally.

*3 The complaint does not propose any standard by which to judge whether one applicant for a waiver was "similarly situated" to another. Rather, it simply asserts in conclusory fashion that the plaintiffs were treated differently from other similarly situated applicants. Such a conclusory allegation conveys no factual meaning unless it is explained by at least some specifics, and specifics are especially needed where those facts that are alleged provide no basis for assigning any particular applicant for a waiver to one class or the other. *See Barrington Cove L.P. v. Rhode Island Hous. and Mortgage Fin. Corp.,* 246 F.3d 1, 8-10 (1st Cir.200l).

It might be suggested that all applicants should be considered "similarly situated" simply because they had all made requests for waivers of the dead-end street length regulation. But that is so broad a defmition of "similarly situated" that it is not useful for equal protection analysis; it could be applied to any group of applicants where, looking back, one could see that there had been some who succeeded and some who failed. For example, high school students whose applications to a particular college were rejected could allege that they were being treated differently from the "similarly situated" fellow students whose applications were accepted. In the example, one would want to know a good deal more about the merits of individual applicants before deciding who was similarly situated to whom. "Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." *Dartmouth Review,* 889 F.2d at 19.

The complaint in this case fails to allege facts to permit judgment that the plaintiffs were "similarly situated" to other applicants for waivers from the Board so that equal protection comparisons could properly be made. The *factual* allegations of this complaint, taken as true, are insufficient to support a conclusion that the plaintiffs were treated differently from others similarly situated.

II. *The "No Rational Basis" Standard*

The plaintiffs also have failed to set forth factual allegations sufficient to support a conclusion that the Board had no rational basis for denying their application, having granted others. *See Olech,* 528 U.S. at 564. The complaint lacks any factual allegations that would warrant an inference that the Board's denial was irrational or was motivated by ill will. The plaintiffs have not alleged that the Board deliberately sought to deprive them of the equal protection of the laws for improper or malicious reasons, much less what those reasons might be.

The plaintiffs' reliance on *Olech* to support the proposition that the Board's subjective motivation is completely inapposite in determining whether it violated their equal protection rights is misplaced. First, *Olech* emphasizes that an equal protection plaintiff must allege that he has been *"intentionally* treated differently from others similarly situated." *Id.* at 564 (emphasis added). Second, the concept "no rational basis" in the context of a "class of one" equal protection claim requires more than just a perceived difference in treatment for which the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 31655250 (D.Mass.)

(Cite as: 2002 WL 31655250 (D.Mass.))

Page 4

plaintiff has received an unsatisfactory explanation. *See Collins,* 244 F.3d at 251; *Hilton v. City of Wheeling,* 209 F.3d 1005, 1008 (7th Cir.2000). Otherwise, disgruntled applicants for permits, licenses, zoning waivers and the like could turn virtually every denial into a federal constitutional claim. *See Olech,* 528 U.S. at 566 (Breyer, J. concurring)("that added factor ... is sufficient to minimize any concern about transforming run-of-the-mill zoning cases into cases of constitutional right"); *Collins,* 244 F.3d at 251.

*4 The "no rational basis" standard requires the plaintiffs to allege that the Board deliberately sought to deprive them of equal protection of the laws for reasons of a personal or improper nature. *See Olech,* 528 U.S. at 566 (alleging ill will resulting from unrelated lawsuit); *Collins,* 244 F.3d at 252 (alleging retaliation for political views, but dismissing claim on other grounds); *Hilton, 209* F.3d at 1008 (holding allegations of "vindictive action" necessary to state claim). The plaintiffs have not pled any such facts in their complaint, but have merely characterized the Board's decision as lacking rational basis.

Moreover, the undisputed facts suggest that there *was* an evident rational basis for the Board's denial of Lakeside's waiver request. Whether to grant a waiver under the regulations lay within the Board's discretion. By denying the request, the Board was not arbitrarily making a rule of its own to be applied *ad hoc* to the plaintiffs alone. Rather, it was enforcing standing regulations duly adopted. Enforcing existing regulations as written is quintessentially rational. Even if, as the plaintiffs argue, the regulation pertaining to dead-end street length had been annulled *de facto* by the Board's practice of granting waivers freely, that would not prove that a reciprocal *de facto* return to adherence to the letter of the regulations would be irrational. In the circumstances outlined in the complaint as supplemented by the parties' stipulation in the Land Court case, it appears undisputed that the Board tightened its policy of freely granting waivers in 1997, and began denying them, consistent with the goal expressed in the 1997 master plan to improve street connectivity and circulation patterns within subdivisions. Efforts to achieve that policy goal would plainly be a "rational basis" for a refusal to grant waivers.

Given this factual context, the plaintiffs may not rest on the summary allegations that the decision was arbitrary or irrational. They have an obligation to plead facts that, if accepted as true, would justify the conclusion they propose. The plaintiffs have not alleged any facts that would indicate the Board's decision lacked rational basis or was motivated by anything other than a legitimate change in town planning goals.

III. *Leave to Amend*

At argument, the plaintiffs suggested that if their pleading were deemed insufficient they should be granted leave to file a more specific amended complaint. The defendants opposed the request.

The plaintiffs have had ample notice of the defendants' motion for judgment on the pleadings, and consequently have had ample time to address the insufficiencies of the complaint's factual allegations and to offer an amended complaint. But rather than seeking to amend their complaint, they have instead elected to stand upon it. There is no unfairness in denying them leave to replead at this point.

*Conclusion*

For the foregoing reasons, the motion for judgment on the pleadings is GRANTED. Judgment shall be entered in favor of the defendants, dismissing the action with prejudice.

Motions, Pleadings and Filings (Back to top)

• 1:00CV12l70 (Docket)

(Oct. 19,2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.