UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-30136-MAP

DONOVAN BROTHERS, INC., and ELSIE M. LAFOND,

    Plaintiffs

v.

JOSEPH FONTAINE, JOANNE HEBERT and ROBERT W. PIKE, JR., as they are the Zoning Board of Appeals of the Town of Montgomery, and ELWIN R. CLARK, JR., as he is the Building Inspector & Zoning Enforcement Officer of the Town of Montgomery; and WAYNE L. MORSE, Chairman, CHARLES R. PECKHAM, and DANIEL JACQUES, as they are the Board of Selectmen of the Town of Montgomery,

    Defendants

## DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS OF RECORD AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

MATERIAL FACTS NOT SUBJECT TO DISPUTE

    1.    By deed dated October 12, 2006, and recorded with the Hampden County Registry of Deeds ("Registry") in Book 16254, Page 561, Elsie M. LaFond conveyed to Donovan Brothers, Inc., three parcels of land off Carrington Road in the Town of Montgomery, Massachusetts ("Locus"). See Affidavit of Jonathan D. Eichman, attached hereto as Exhibit 1, ("Eichman Affidavit"), Exhibit A, for a true copy of said deed.

    2.    Locus is shown on a plan recorded in Plan Book 343, Page 61, and comprises approximately 13.9 acres. See Eichman Affidavit, Exhibit B, for a true copy of the plan.

3. Locus was originally part of a 75-acre parcel acquired by Isadore LaFond from the Executor under the Will of Mary Rivard by deed dated March 20, 1958, and recorded with the Registry in Book 2600, Page 501. See Eichman Affidavit, Exhibit C, for a true copy of said deed.

4. Elsie LaFond acquired sole title to Locus in 1996, by deeds recorded with the Registry in Book 9540, Page 417, and Book 9540, Page 419. See Eichman Affidavit, Exhibit D, for true copies of said deeds.

5. The Town of Montgomery first adopted zoning bylaws on July 21, 1956 ("1956 Bylaws"). See Affidavit of Jane Thielen, attached hereto as Exhibit 2, ("Thielen Affidavit"), Exhibit A, for a true copy of said zoning bylaws.

6. Pursuant to the 1956 Bylaws, the entire Town of Montgomery was classified as an Agricultural-Residential District. Id.

7. Section III of the 1956 Bylaws provided, in pertinent part, that "no structure or land shall hereafter be used or occupied . . . unless in conformity with the regulations for an Agricultural-Residential District." Id.

8. The removal of "gravel, loam, sand and stone" was not included as one of the four uses allowed by right under the 1956 Bylaws (referred to therein as "permitted uses"), but was allowed by "special authorization" (i.e., special permit) issued by the Board of Appeals. Id.

9. Section 5-1 of the 1956 Bylaws provided that a non-conforming use discontinued for more than one year was not to be reestablished. Id.

10. On September 20, 1971, the Town amended the 1956 Bylaws to create a set of zoning and other bylaws entitled: "New and Revised General, Zoning and Building Code Bylaws

of Montgomery, Massachusetts." ("1971 Bylaws"). See Thielen Affidavit, Exhibit B, for a true copy of the 1971 Bylaws.

11.   In Article 3 of the zoning bylaws portion of the 1971 Bylaws, the Town retained from the 1956 Bylaws the express prohibition of use of property other than in conformance with the bylaws, the single classification of the Town as an agricultural-residential zoning district, and the four "permitted uses" allowed as of right. Id.

12.   The 1971 Bylaws deleted "gravel, loam, sand and stone removal" as a special permit use in the Town, and inserted as a new special permit use "commercial use of property . . . subject to appropriate conditions where such are deemed necessary to protect the neighborhood and town." Id.

13.   Article 7 of the Building Code portion of the 1971 Bylaws provided that any nonconforming use existing at the time of adoption of the Bylaw may not be reestablished after voluntary discontinuance of one year. Id.

14.   Between 1971 and the present, the Town's zoning bylaws remained the same with respect to removal of gravel, loam, sand and stone from any land in the Town, and with respect to the treatment of nonconforming uses. See Thielen Affidavit, ¶ 7.

15.   Pursuant to the Town's current zoning bylaws ("Zoning Bylaws"), the removal of gravel, loam, sand and stone is not a use of property expressly allowed as of right within the Town. See Thielen Affidavit, Exhibit C, for a true copy of the Zoning Bylaws.

16.   The Town's Zoning Board of Appeals has never issued a special permit allowing earth removal from Locus. See Thielen Affidavit, ¶ 9.

17. As of December 23, 2004, the plaintiff, Elsie LaFond, allowed the defendant, Donovan Brothers, Inc., a company engaged in extracting and selling sand and gravel for profit, to remove earth materials from Locus. See Amended Complaint, ¶¶ 10-11.

18. By letter to the Town's Building Inspector dated December 23, 2004, an abutter to Locus complained that the Zoning Bylaws did not allow use of Locus for earth removal purposes (i.e., as a "gravel pit"), and requested that the Building Inspector issue an order to Elsie LaFond directing her to cease using Locus for such purposes. See Thielen Affidavit, Exhibit D, for a true copy of the letter.

19. On or about December 22, 2004, defendant Selectman, Daniel Jacques, spoke to Town Counsel, Joel Bard, who advised that the Building Inspector is charged with the enforcement of zoning ordinances and/or by-laws, pursuant to M.G.L. c. 40, § 7. Town Counsel further advised that complaints relating to zoning issues should be directed to the Building Inspector and not the Select Board. See Eichman Affidavit, Exhibit O, for a true copy of the minutes of the February 15, 2005 meeting of the Board of Selectmen of the Town of Montgomery; Deposition of Daniel Jacques, pp. 35-37, said deposition being attached as Exhibit P to the Eichman Affidavit; Deposition of Charles R. Peckham, pp. 32-35, 45-49, said deposition being attached as Exhibit Q to the Eichman Affidavit.

20. On or about December 23, 2004, an abutter to the Locus attended a meeting of the Select Board to raise concerns about the subject Locus. See Deposition of Daniel Jacques, pp. 36-37, said deposition being attached as Exhibit P to the Eichman Affidavit; Deposition of Charles R. Peckham, pp. 43-44, said deposition being attached as Exhibit Q to the Eichman Affidavit; Deposition of Wayne L. Morse, pp. 8-9, said deposition being attached as Exhibit R to the Eichman Affidavit.

21. At the Select Board meeting on December 23, 2004, defendant, Daniel Jacques, advised that the Select Board could not address the issues due to conflicts for each Select Board member. See Eichman Affidavit, Exhibit O, for a true copy of the minutes of the December 23, 2004 meeting of the Board of Selectmen of the Town of Montgomery; Deposition of Wayne L. Morse, pp. 9-13, said deposition being attached as Exhibit R to the Eichman Affidavit.

22. At the Select Board meeting on December 23, 2004, the abutter was advised to direct his issue to the Building Inspector and Zoning Board of Appeals. See Eichman Affidavit, Exhibit O, for a true copy of the minutes of the December 23, 2004 meeting of the Board of Selectmen of the Town of Montgomery; Deposition of Daniel Jacques, pp. 36-37, said deposition being attached as Exhibit P to the Eichman Affidavit; Deposition of Charles R. Peckham, pp. 51, 94-95, said deposition being attached as Exhibit Q to the Eichman Affidavit; Deposition of Wayne L. Morse, p. 9, said deposition being attached as Exhibit R to the Eichman Affidavit.

23. At said meeting, defendants, Daniel Jacques and Wayne Morse, agreed to authorize the Building Inspector to contact Town Counsel with questions as to the manner in which to deal with a written complaint. See Eichman Affidavit, Exhibit O, for a true copy of the minutes of the December 23, 2004 meeting of the Board of Selectmen of the Town of Montgomery; Deposition of Daniel Jacques, pp. 40-41, said deposition being attached as Exhibit P to the Eichman Affidavit.

24. The Building Inspector did contact Town Counsel as to the manner in which to proceed. See Eichman Affidavit, Exhibit O, for a true copy of the minutes of the February 15, 2005 meeting of the Board of Selectmen of the Town of Montgomery; Deposition of Elwin R. Clark, Jr., pp. 58-62, said deposition being attached as Exhibit E to the Eichman Affidavit.

25. By letter dated January 13, 2005, issued in response to the December 23, 2004 request, the Montgomery Building Inspector ordered Elsie LaFond to cease using Locus as a gravel pit because such use was unlawful under the Zoning Bylaws ("Order"). See Thielen Affidavit, Exhibit E, for a true copy of the Order, and Exhibit D, for a true copy of the request.

26. The Building Inspector issued the Order because he believed the Zoning Bylaws did not allow use of Locus for a gravel pit, and because he could find no evidence that a special permit had ever been issued authorizing such use. See Deposition of Elwin R. Clark, Jr., pp. 64-68, said deposition being attached as Exhibit E to the Eichman Affidavit.

27. No member of the defendant ZBA spoke to the defendant Building Inspector prior to the issuance of the Order. See Deposition of Elwin R. Clark, Jr., pp. 70-72, said deposition being attached as Exhibit E to the Eichman Affidavit; Deposition of Joseph Fontaine, pp. 10, 26, said deposition being attached as Exhibit S to the Eichman Affidavit; Deposition of Robert W. Pike, Jr., p. 10, said deposition being attached as Exhibit T to the Eichman Affidavit; Deposition of Joanne Hebert, p. 10-11, 27, said deposition being attached as Exhibit U to the Eichman Affidavit.

28. No member of the defendant Select Board spoke to the defendant Building Inspector prior to the issuance of the Order. See Deposition of Elwin R. Clark, Jr., p. 33, said deposition being attached as Exhibit E to the Eichman Affidavit; Deposition of Wayne L. Morse, p. 10, said deposition being attached as Exhibit R to the Eichman Affidavit; Deposition of Charles R. Peckham, pp. 52-53; 95, said deposition being attached as Exhibit Q to the Eichman Affidavit; Deposition of Daniel Jacques, pp. 39, 68-69, said deposition being attached as Exhibit P to the Eichman Affidavit.

6

29.  By letter to the Town Clerk of the Town of Montgomery dated February 9, 2005, counsel for the plaintiffs gave notice that the plaintiffs wished to appeal the Building Inspector's Order to the Zoning Board of Appeals pursuant to G.L. c.40A, §15.  See Thielen Affidavit, Exhibit F, for a true copy of the notice.

30.  The February 9, 2005 notice specified as grounds for appeal, *inter alia*, that Elsie LaFond had allowed Donovan Brothers to extract gravel from Locus "for a number of years prior to January 13, 2005," but made no mention of any claim that the gravel pit use was exempt from application of the Zoning Bylaws because of such prior use.  Id.

31.  On or about February 10, 2005, defendant, Robert W. Pike, Jr., Chairman of the Zoning Board of Appeals, attended the Select Board meeting to address the appeal received by the Town Clerk.  At said meeting, it was decided that Town Counsel should be called to clarify the respective parties' roles.  See Eichman Affidavit, Exhibit O, for a true copy of the minutes of the February 10, 2005 meeting of the Board of Selectmen of the Town of Montgomery.  Deposition of Daniel Jacques, pp. 47-49, said deposition being attached as Exhibit P to the Eichman Affidavit; Deposition of Robert Pike, Jr., pp. 7-9, said deposition being attached as Exhibit T to the Eichman Affidavit.

32.  On or about February 15, 2005, a special Select Board meeting was held via telephone with Town Counsel.  In the interim, defendants, Daniel Jacques and Wayne Morse, contacted the State Ethics Commission to determine the manner in which to proceed in light of the conflicts presented.  At said meeting, both defendants, Selectmen Daniel Jacques and Wayne Morse, identified conflicts.  As such, in accordance with the recommendation of the Ethics Commission, in the presence of Town Counsel, the "rule of necessity" was invoked.  See

Eichman Affidavit, Exhibit O, for a true copy of the minutes of the February 15, 2005 meeting of the Board of Selectmen of the Town of Montgomery.

33. In response to a direct inquiry as to the manner in which to proceed, Town Counsel Rich Bowen advised the Select Board that they have no role in zoning issues. At the conclusion of the meeting, the Select Board requested that Jane Thielen contact defendant, Robert W. Pike, Jr., and advise him that he had permission to contact Town Counsel. See Eichman Affidavit, Exhibit O, for a true copy of the minutes of the February 15, 2005 meeting of the Board of Selectmen of the Town of Montgomery.

34. The Montgomery Zoning Board of Appeals ("ZBA") opened a public hearing on the plaintiffs' appeal on March 15, 2005, and conducted an additional session of the public hearing on April 14, 2005. See Affidavit of Robert W. Pike, Jr. ("Pike Affidavit"), ¶¶ 2, 4.

35. Representatives of the plaintiffs, including counsel for the plaintiffs, appeared at the public hearing and testified in support of the plaintiffs' appeal. See Pike Affidavit, ¶ 5; Affidavit of Joseph Fontaine ("Fontaine Affidavit"), ¶ 5; Affidavit of Joanne Hebert ("Hebert Affidavit"), ¶ 5.

36. Those representatives gave uncontradicted testimony to the ZBA to the effect that Donovan Brothers first began removing gravel from Locus sometime during the 1970's. See Pike Affidavit, ¶ 6; Fontaine Affidavit, ¶ 6; Hebert Affidavit, ¶ 6.

37. No other evidence was offered concerning the history of the use of Locus. See Pike Affidavit, ¶ 7; Fontaine Affidavit, ¶ 7; Hebert Affidavit, ¶ 7.

38. The plaintiffs did not ask the ZBA to consider, and the ZBA accordingly did not consider, whether the plaintiffs' use of Locus was exempt from application of the Zoning Bylaws

because the use pre-existed adoption of the Bylaws. See Pike Affidavit, ¶¶ 8, 10; Fontaine Affidavit, ¶¶ 8, 10; Hebert Affidavit, ¶¶ 8, 10.

39. The ZBA closed the public hearing on April 14, 2005, and voted 2-1 in favor of upholding the Building Inspector's Order. See Pike Affidavit, ¶ 9; Fontaine Affidavit, ¶ 9; Hebert Affidavit, ¶ 9.

40. With the exceptions of the defendant, Robert W. Pike, Jr.'s, attendance at the Select Board meeting on February 10, 2005 and defendants Daniel Jacques and Charles Peckham's attendance at the ZBA meetings on March 15, 2005 and April 14, 2005, no member of the ZBA had any communication with any member of the Select Board prior to the issuance of the ZBA's decision. Defendant Jacques attended the ZBA meetings in his capacity as an abutter, spoke at one or both of the meetings, and presented aerial photographs to the ZBA. Counsel for the plaintiffs, Frank Antonucci, Esq., also attended these ZBA meetings. See Deposition of Daniel Jacques., pp. 43-44, 49-50, 67-68, said deposition being attached as Exhibit P to the Eichman Affidavit; Deposition of Charles R. Peckham, p. 65-66, 96, said deposition being attached as Exhibit Q to the Eichman Affidavit; Deposition of Joanne Hebert, pp.10-11, 27, said deposition being attached as Exhibit U to the Eichman Affidavit; Deposition of Robert Pike, Jr., p. 10, said deposition being attached as Exhibit T to the Eichman Affidavit; Deposition of Joseph Fontaine, pp. 18-19, 26, said deposition being attached as Exhibit S to the Eichman Affidavit.

41. The ZBA issued a decision dated April 18, 2005, setting forth its vote on the plaintiffs' appeal and the reasons therefore, and filed a copy of that decision with the Town Clerk ("Decision"). Id. at ¶ 11; see Thielen Affidavit, Exhibit G, for a true copy of the Decision.

42. On or about May 12, 2005, the plaintiffs appealed the Decision to the Hampden Superior Court pursuant to G.L. c.40A, §17, thereby initiating the instant litigation.

43. Notwithstanding the fact that the plaintiffs did not allege to the ZBA, and the ZBA had not considered, whether the plaintiffs' use of Locus was grandfathered, the plaintiffs' alleged in their complaint that their use of Locus was "entitled to protection under G.L. c.40A, §6, as legal, pre-existing, non-conforming use." See Amended Complaint, ¶ 22.[1]

44. On August 19, 2005, the defendants propounded interrogatories and document requests upon each of the plaintiffs. See Eichman Affidavit, ¶ 8.

45. Interrogatory No. 4 of the interrogatories propounded upon Donovan Brothers was as follows:

> Please describe in detail when Donovan Brothers first began using the Gravel Bank for earth removal operations, and set forth the periods of time Donovan Brothers used the Gravel Bank for such purpose between the time it first came into operation and the present. "In operation" shall include those periods of time when the Gravel Bank was not being actively used for earth removal purposes, but had not been reclaimed for other uses.

See Defendants' First Set of Interrogatories Propounded to the Plaintiff, Donovan Brothers, Inc., said Interrogatories being attached as Exhibit F to the Eichman Affidavit.

46. Interrogatory No. 4 of the interrogatories propounded upon Elsie LaFond was as follows:

> Please describe in detail when the Gravel Bank first came into operation, and set forth the periods of time the Gravel Bank was used for earth removal operations between the time it first came into operation and the present. "In operation" shall include those periods of time when the Gravel Bank was not being actively used for earth removal purposes, but had not been reclaimed for other uses.

See Defendants' First Set of Interrogatories Propounded to the Plaintiff, Elsie M. LaFond, said Interrogatories being attached as Exhibit G to the Eichman Affidavit.

---

[1] The Plaintiffs' retained this allegation when they filed an Amended Complaint with this Court.

10

47. Document Request No. 3 asked each of the plaintiffs to provide all documents relied upon to provide, or concerning, the plaintiffs' answers to Interrogatory No. 4. See Defendants' First Request for Production of Documents Propounded to Defendant, Elsie M. LaFond, and Defendants' First Request for Production of Documents Propounded to the Plaintiff, Donovan Brothers, Inc., said Requests being attached as Exhibits H and I to the Eichman Affidavit.

48. Document Request No. 16 required each of the plaintiffs to provide all permits allowing for the removal and sale of earth materials from Locus. Id.

49. According to the sworn answers to interrogatories given by Gayle Donovan of Donovan Brothers in this matter on October 25, 2005, Donovan Brothers first began removing earth materials from Locus in the 1970's. See Answers of the Plaintiff, Donovan Brothers, Inc., to Defendants' First Set of Interrogatories, No. 4, such Answers being attached as Exhibit J to the Eichman Affidavit.

50. According to the sworn answers to interrogatories given by Elsie LaFond in this matter on December 22, 2005, Locus was first used for earth removal purposes in the 1970's, when Donovan Brothers began extracting gravel from Locus. See Plaintiff, Elsie M. LaFond's Answers to Defendants' First Set of Interrogatories, No. 4, such Answers being attached as Exhibit K to the Eichman Affidavit.

51. Elsie LaFond has never supplemented her initial Answers to Interrogatories, and has never provided the defendants with responses to the document requests propounded upon her. See Eichman Affidavit, ¶ 15.

52. In response to the defendants' document requests propounded upon it, Donovan Brothers has provided <u>one</u> document to the defendants: a partially signed copy of a purchase and

sale agreement for Locus between Donovan Brothers and Elsie LaFond. See Eichman Affidavit, ¶ 16.

DEFENDANTS,

By their attorneys,

/s/ Jonathan D. Eichman
Joel B. Bard (BBO# 029140)
Jonathan D. Eichman (BBO# 641227)
 Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

By____/s/ Nancy Frankel Pelletier____
Nancy Frankel Pelletier, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.: 544402

299486/MONT/0007

CERTIFICATE OF SERVICE

I, Jonathan D. Eichman, certify that the above document will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system, upon notification by the Court of those individuals who will not be served electronically.
/s/Jonathan D. Eichman