UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-30136-MAP

| | |
|---|---|
| DONOVAN BROTHERS, INC., and | ) |
| ELSIE M. LAFOND, | ) |
|     Plaintiffs | ) |
| | ) |
| vs. | ) |
| | ) |
| JOSEPH FONTAINE, JOANNE HEBERT AND | ) |
| ROBERT W. PIKE, JR., AS THEY ARE THE | ) |
| ZONING BOARD OF APPEALS OF THE | ) |
| TOWN OF MONTGOMERY, and | ) |
| ELWIN R. CLARK, JR., AS HE IS THE | ) |
| BUILDING INSPECTOR & ZONING | ) |
| ENFORCEMENT OFFICER OF THE | ) |
| TOWN OF MONTGOMERY; and WAYNE L. | ) |
| MORSE, CHAIRMAN, CHARLES R. | ) |
| PECKHAM, and DANIEL JACQUES, AS THEY | ) |
| ARE THE BOARD OF SELECTMAN OF THE | ) |
| TOWN OF MONTGOMERY, | ) |
|     Defendants | ) |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This action concerns the use of land off Carrington Road in the Town of Montgomery ("Locus") formerly owned by the plaintiff, Elsie M LaFond ("LaFond"), and now owned by the plaintiff, Donovan Brothers, Inc. ("Donovan Brothers"). Donovan Brothers is a for-profit corporation engaged in excavating and selling earth materials such as gravel. For some time prior to January 13, 2005, Donovan Brothers had been excavating and removing earth materials from Locus. Acting in response to a written request from abutters to Locus, on January 13, 2005, the Town of Montgomery Building Inspector ordered LaFond and Donovan Brothers to cease removing earth materials from Locus because such use was not permitted under the

Town's zoning bylaws. LaFond and Donovan Brothers thereupon appealed the order to the Montgomery Zoning Board of Appeals, pursuant to G.L. c.40A, §15, who, after a public hearing, voted 2-1 to uphold the order. The plaintiffs then initiated the instant matter by filing an appeal of the Zoning Board of Appeal's decision with the Hampden Superior Court, pursuant to G.L. c.40A, §17, and naming the members of the Board of Appeals and the Building Inspector as defendants.

After the defendants removed the complaint to this Court to address the equal protection claim raised by the plaintiffs' original complaint, the plaintiffs amended the complaint to add each of the members of the Town's Board of Selectmen as defendants. The Amended Complaint now essentially contains two counts: the plaintiffs' appeal of the Zoning Board of Appeals' decision, brought pursuant to G.L. c.40A, §17, and the equal protection claim. The defendants now move for summary judgment on all claims raised by the plaintiff.

Summary judgment for the defendants is warranted on the G.L. c.40A, §17 count because, since they were first adopted in 1956, the Town's zoning bylaws have allowed earth removal only by special permit, if at all, and the plaintiffs have never obtained the requisite special permit. The plaintiffs' claim that the earth removal use is exempt from application of the zoning bylaws because it is grandfathered by application of G.L. c.40A, §6 and the zoning bylaws, was never considered or decided by the Zoning Board of Appeals, and thus is not properly before the Court. To the extent such a claim is properly before the Court, the defendants have moved in the alternative to remand the nonconforming use question to the Zoning Board of Appeals for such consideration and decision.

The within Memorandum is submitted in support of the defendants' Motion for Summary Judgment.

465334

## II. <u>STATEMENT OF FACTS</u>

The relevant facts underlying this case are set forth in the defendants' Local Rule 56.1 Statement of Material Facts of Record, filed herewith.

## III. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should be entered where the non-moving party has the burden of proof and, based on the record before the Court, "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1987). The moving party may prevail on summary judgment either by submitting affirmative evidence negating an element of the non-movant's claim, or demonstrating that the non-movant has no reasonable expectation of proving an element of the claim due to insufficient evidence. See <u>Fireman's Fund Ins. Co. v. Harley Realty Co.</u>, 24 F.Supp.2d 117, 118 (D.Mass. 1998, Keeton, J.).

## IV. <u>ARGUMENT</u>

The plaintiffs' complaint was brought pursuant to G.L. c.40A, § 17, which is the exclusive statutory remedy for persons aggrieved by a decision of a zoning board of appeals. See G.L. c.40A, § 17; <u>Neuhaus v. Building Inspector of Marlborough</u>, 11 Mass.App.Ct. 230, 235 (1981) (holding that the appeals route set forth in G.L. c.40A, § 17 is mandatory). Pursuant to G.L. c.40A, § 17, the reviewing court is to find the facts *de novo*, and, based upon such facts, determine "the legal validity of the decision of the board." <u>Bicknell Realty Co. v. Board of Appeal of Boston</u>, 330 Mass. 676, 679 (1953); see also <u>Prudential Ins. Co. of America v. Board</u>

of Appeals of Westwood, 23 Mass. App. Ct. 278, 283-84 (1986). A decision of a board of appeals may not be disturbed unless "it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary." Davis v. Zoning Bd. of Chatham, 52 Mass.App.Ct. 349, 355 (2001), quoting from Roberts v. Southwestern Bell Mobile Sys., Inc., 429 Mass. 478, 486 (1999).

In its Decision, the Zoning Board of Appeals simply stated that it was required to leave the Building Inspector's order in place. See Exhibit 2 to Defendants' Local Rule 56.1 Statement of Material Facts of Record as to Which There Is No Genuine Issue to be Tried ("SOF"), Affidavit of Jane Thielen ("Thielen Affidavit"), Exhibit G.[1] The Building Inspector's order stated that the removal of earth materials from Locus was an unlawful use under the Town's zoning bylaws. See Thielen Affidavit, Exhibit E. Thus, aside from the plaintiffs' equal protection claim, the issue raised for this Court by the plaintiffs' complaint, and the issue on which the defendants now seek summary judgment, is whether the Montgomery Zoning Board of Appeals properly decided that the removal of earth materials from the LaFond property is proscribed by the Town's zoning bylaws. See Amended Complaint.

**A.    The Zoning Board Of Appeals Properly Upheld The Building Inspector's Decision That The Plaintiffs' Removal Of Earth Materials From Locus Was Unlawful Pursuant To The Montgomery Zoning Bylaws.**

The Town's interpretation of the Zoning Bylaws is entitled to "all rational presumptions" in its favor, provided there is a rational relation between the interpretation and the purpose of the Bylaw. Bldg. Cmr. of Franklin v. Dispatch Comm. of New England, Inc., 48 Mass. App. Ct. 709, 713 (2000); see also Livoli v. Zoning Bd. of Appeals of Southborough, 42 Mass. App. Ct. 921,

---

[1] Although a board of appeals hearing an appeal pursuant to G.L. c.40A, § 15 is required to set forth clearly the reasons for its decision on the appeal, see G.L. c.40A, § 15, a failure to cite particularized reasons when denying relief is sufficient if a rational basis for the denial exists which is supported by the record. Davis v. Board of Appeals of Chatham, 52 Mass.App.Ct. 349, 356 (2001).

923 (1997) ("a reasonable interpretation" of a board's own zoning by-law is entitled to deference"); *Manning v. Boston Redevelopment Auth.*, 400 Mass. 444, 452-53 (1987) ("[w]e give substantial deference to the construction placed on . . . a Bylaw by the agency charged with its administration"). This is because a local board is presumed to have an "intimate understanding" of the conditions within a town, as well as the background and purposes of the zoning bylaw. *Murray v. Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 479 (1986). While the correct interpretation of zoning bylaws is ultimately a question of law for a reviewing court, the court's decision must take into account the Board's "home grown knowledge about the history and purpose of [the Bylaws]." *Duteau v. Zoning Bd. of Appeals of Webster*, 47 Mass. App. Ct. 664, 669 (1999). When a local board's interpretation of its bylaw is reasonable, the reviewing court may not substitute its own interpretation for that of the board. See <u>Davis</u>, 52 Mass. App. Ct. at 356, n.11 (and cases cited).

1.    **The Plaintiffs' Removal Of Earth Materials from Locus Is Not Allowed as of Right Pursuant To The Montgomery Zoning Bylaws.**

Pursuant to G.L. c.40A, § 4, a Town may adopt zoning bylaws. Such bylaws may regulate "the use of land" to protect the health, safety, and general welfare of a Town's inhabitants. <u>See</u> G.L. c.40A, § 1A (Def. of "zoning"). Bylaws restricting the use of land to certain specified uses, such as residential use, have been upheld under the United States and Massachusetts Constitutions. <u>See, e.g.</u>, <u>Kaplan v. Boston</u>, 330 Mass. 381 (1953). The purpose of such bylaws is the preservation in the public interest of certain neighborhoods against those uses not permitted which are believed to be deleterious to such neighborhoods. *Id.* at 384. The Town has adopted the Zoning Bylaws, which specify that the Town shall be comprised of one zoning district, and specify what uses are allowed in that district. <u>See</u> Thielen Affidavit, Exhibits A-C.

To lawfully limit a zoning district to certain uses and exclude others, it is not necessary to spell out each excluded use in the applicable bylaw. Based on the familiar principle of statutory interpretation that "express mention of one matter excludes by implication other similar matters not mentioned," a zoning bylaw enumerating certain permitted uses prohibits by inference all other uses not enumerated, regardless of whether the bylaw as a whole is expressly prohibitive in form. *Chelmsford v. Belleville*, 342 Mass. 216, 217 (1961) (stating that "[t]he benefits of a zoning statute are not to be dispensed with upon the theory that the statute does not spell out the restrictive or prohibitive elements involved"); see also Town of Brookline v. Co-Ray Realty Co., 326 Mass. 206, 212 (1950) (holding that the "mere enumeration of uses" is sufficient to demonstrate that a use not enumerated is not permitted). As the Chelmsford Court noted: "[i]n drafting a zoning by-law it may be more expeditious to list the uses which are permitted than to attempt to detail the prohibited uses." Chelmsford, supra. Article 3 of the Zoning Bylaws makes the common law principle of statutory interpretation set forth in Chelmsford express when it provides that "no structure or land shall hereafter be used or occupied . . . unless in conformity with the regulations for an Agricultural-Residential District." See Thielen Affidavit, Exhibit C.

Removal of earth materials from property in the Commonwealth has long been considered a distinct use of property subject to regulation, either implicitly or explicitly, by zoning bylaw. See, e.g., Town of Canton v. Bruno, 361 Mass. 598 (1972); Fiske v. Board of Selectmen of Hopkinton, 354 Mass. 269 (1968); Selectmen of Sudbury v. Garden City Gravel Corp., 300 Mass. 41 (1938). The Town expressly undertook to regulate the removal of "gravel, loam, sand and stone" when it first adopted zoning bylaws in 1956. See Thielen Affidavit, Exhibit A, Section 3-1. The 1956 Bylaws permitted such use, commercial or otherwise, only by special permit. Id.

465334

In 1971, the Town amended its zoning bylaws and altered the manner in which it regulated earth removal. Specifically, it removed any mention of earth removal from the zoning bylaws, and inserted as a new special permit use "commercial use of property . . . subject to appropriate conditions where such are deemed necessary to protect the neighborhood and town." See Thielen Affidavit, Exhibit B: Zoning Bylaws, Article 3, Section B.4 (codified as Article 3, Section B.5 in the current Zoning Bylaws). Thus, applying Article 3, of the 1956 Bylaws, which has remained in each successive reiteration of the zoning bylaws, as well as the common law principle of statutory interpretation set forth in Chelmsford, the effect of the 1971 amendments was to prohibit all earth removal in the Town unless allowed by special permit for "commercial use of property." The applicable zoning bylaws have remained unchanged since 1971, and thus the plaintiffs' removal of earth materials from Locus is unlawful unless authorized by special permit. See Thielen Affidavit, ¶ 7.

The plaintiffs may point out that several gravel pits have been operating in the Town without interference from Town authorities during the period of 1956 to the present, and from this argue that the Town is estopped by its failure to take enforcement action against such use from now enforcing its Zoning Bylaws as to Locus. This argument must fail. It is settled in the Commonwealth that "[t]he right of the public to have the zoning by-law properly enforced cannot be forfeited by the action of its officers." Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 162 (1977) (and cases cited). Correctly interpreted, the Town's zoning bylaws have never allowed earth removal as of right, and no amount of non-enforcement can change that fact.

The plaintiffs may also argue that the history of gravel pits in the Town is evidence that the 1971 amendments to the Town's zoning bylaws should be interpreted to allow, rather than

deny, gravel pits as a permissive use.  On its face, this argument is nonsensical, as not only did the four permissive use categories of the 1956 Bylaws remain unchanged, but no amount of argument can so decorate commercial earth removal as to make it part of the agricultural, residential and religious use allowed by those categories.  In addition, this argument ignores the fact that prior to the 1971 amendments, the zoning bylaws specifically allowed gravel pits by special permit, and thus by implication did _not_ allow them as of right.  When the 1956 Bylaws were amended in 1971 so that earth removal was deleted as a specific special permit use, but the four categories of permissive use remained unchanged, it logically follows that earth removal remained a use of property not allowed as of right.  This conclusion is strengthened by the fact that the 1971 Bylaws also included a new special permit use category for "commercial use" of property, which could be construed to include commercial earth removal.  In sum, consistent with the principles of common law, and any reasonable construction of the four permissive use categories, the 1971 Bylaws simply redefined what earth removal was allowed per special permit, and continued to prohibit such use as a matter of right.

Equally as important, Town officials and boards are distinct in composition and purpose from the Town's legislative body, Town Meeting, and it would be improper to construe the intent of Town Meeting from non-action after the fact of those persons and bodies charged with enforcing the zoning bylaws adopted by Town Meeting.  If that were possible, zoning bylaws could essentially be amended without following the procedure set forth in G.L. c.40A, §5, and Town officials could effectively be barred from enforcing zoning bylaws by such non-action. Nor can the inaction of subsequent Town Meetings be taken to imply intent of the 1971 Town Meeting, as those bodies are not the same.  In sum, this Court should show deference to the interpretations of the Zoning Bylaws made here by the ZBA and the Building Inspector,

interpretations that are consistent with bedrock principles of common law, and are informed by the "home grown knowledge about the history and purpose of [the Zoning Bylaws]" that board and official possess. See Duteau, supra. The ZBA's Decision was correct and must be upheld.

**2.    The Plaintiffs' Removal Of Earth Materials from Locus Has Never Been Authorized by Special Permit.**

As set forth above, Article 3, Section B.5 of the Zoning Bylaws allows commercial use of property by special permit. Donovan Brothers' removes earth materials from Locus for the purpose of sale, and thus plaintiffs' use of the Property might possibly be authorized by special permit issued by the Board of Appeals. See Amended Complaint, ¶¶ 10-11. The Town's records, however, provide no indication that a special permit was ever issued allowing earth removal from Locus. See Thielen Affidavit, ¶ 9. The plaintiffs have impliedly admitted that they do not possess a special permit by failing to respond to the Town's express discovery request for a copy of any such permit. See Exhibit 1 to SOF, Affidavit of Jonathan D. Eichman ("Eichman Affidavit"), ¶¶ 15-16. The plaintiffs' removal of earth materials from Locus was not authorized by special permit, and thus, because such use is not allowed without such a permit, it is unlawful under the Town's zoning bylaws. The ZBA properly so found in its decision upholding the Building Inspector's Order.

In sum, the Zoning Bylaws do not allow plaintiffs' use of Locus, and thus the ZBA's decision, which simply endorsed the Order of the Building Inspector, is correct as a matter of law and must be upheld.

**B.    When Considering And Deciding The Plaintiffs' Appeal From The Building Inspector's Order, The Zoning Board Of Appeals Did Not Consider Or Determine Whether The Removal Of Earth Materials From Locus Was Exempt From Application Of The Zoning Bylaws Because It Was Grandfathered, And Thus That Issue Is Not Properly Before This Court.**

In their complaint, the plaintiffs have raised a claim that their removal of earth materials from Locus is exempt, or "grandfathered", from application of the Zoning Bylaws by operation of G.L. c.40A, § 6. In pertinent part, that statute provides that zoning bylaws shall not apply to uses lawfully begun before the first publication of notice of the public hearing on such bylaw required by G.L. c.40A, § 5.[2] By raising the claim, the plaintiffs hope to show that, even if the ZBA was correct that the Zoning Bylaws do not allow for earth removal from Locus, that activity is lawful because it is exempt from application of the Zoning Bylaws by operation of G.L. c.40A, § 6. Regardless of the validity of this claim, however, it may not properly be considered by this Court because it was not considered and decided by the ZBA in its Decision, and thus is not before this Court.

Although *de novo* review allows this Court to review evidence that was not before the Zoning Board of Appeals in making its Decision, because the scope of this Court's review under G.L. c.40A, § 17 is confined to the legality, *vel non*, of the ZBA's <u>Decision</u>, that review may encompass only those matters actually considered and decided by the Board. <u>See</u> <u>Warren v. Board of Appeals of Amherst</u>, 383 Mass. 1, 8-9 (1981) (refusing to decide a question of nonconforming use raised by the plaintiff on appeal because the factual and legal basis on which the board's decision was to be judged (a variance denial) was different from that applicable to the nonconforming use question); <u>Bicknell</u>, 330 Mass at 679; <u>Pendergast v. Board of Appeals of Barnstable</u>, 331 Mass. 555, 558 (1954); <u>Croteau v. Planning Bd. of Hopkinton</u>, 40 Mass. App. Ct. 922, 923 (1996) (rescript) (holding that a decision of a board of appeals must be sustained when evidence is presented to the reviewing court that provides a rational basis for the decision).

---

[2] The predecessor statute to G.L. c.40A, § 6, former G.L. c.40A, § 5, which was in place in 1956 when the Town adopted zoning bylaws, and is set forth in pertinent part as follows, is different only in the time at which it began to apply: "[e]xcept as provided in section eleven, a zoning ordinance or by-law or any amendment thereof shall not apply to existing buildings or structures, nor to the existing use of any building or structure, or of land to the extent to which it is used *at the time of adoption of the ordinance or by-law*" [emphasis provided].

465334

Pelletier v. Board of Appeals of Leominster, 4 Mass.App.Ct. 58, 62 (1976); see also Canter v. Planning Bd. of Westborough, 4 Mass.App.Ct. 306, 310 (1976) (holding, in the context of *de novo* review pursuant to G.L. c.41, §81BB, that the reviewing court may not deal with "questions of fact which have not been dealt with before the board or the trial court").  To do otherwise would invade the field of administrative discretion, and would be tantamount to allowing parties to raise on appeal a point of law not raised before the trial court.  See S. Kemble Fischer Realty Trust v. Board of Appeals of Concord, 9 Mass. App. Ct. 477, 479-80 (1980).  In sum, it would be unfair, and beyond the scope of this Court's review, to consider and determine a legal question requiring determinations of fact and law within the ZBA's jurisdiction but never made by that board.

It is undisputed that the ZBA did not consider the question of whether earth removal from Locus was grandfathered because it was lawfully begun prior to adoption of the 1956 bylaws.  As set forth above, the Town allowed such use only by special permit from that time forward, and because the plaintiffs cannot show that any such special permit was ever issued, the only possible time such use could have lawfully commenced was prior to the adoption of those bylaws.  Each of the ZBA members has testified that the grandfathering question was never raised or decided at the public hearing on the plaintiffs' appeal.  See Affidavit of Robert W. Pike, Jr. ("Pike Affidavit"), ¶ 10; Affidavit of Joseph Fontaine ("Fontaine Affidavit"), ¶ 10; Affidavit of Joanne Hebert ("Hebert Affidavit"), ¶ 10.  The only testimony concerning when the earth removal use commenced was that the use commenced in the 1970's, thus obviating any consideration of the grandfathering question.  See Pike Affidavit, ¶¶ 6-7; Fontaine Affidavit, ¶¶ 6-7; Hebert Affidavit, ¶¶ 6-7.

Even if such testimony can be construed as at least raising the question in the abstract of when the use may have commenced, there is no dispute that no testimony at all was given, and no decision made, on whether the allegedly grandfathered use was continued to the present without forfeit due to discontinuance or abandonment. Id. Section 5-1 of the 1956 bylaws, which has remained in place without significant amendment since that time, provided that a nonconforming use "discontinued for one year" could not be re-established. See Thielen Affidavit, Exhibits A-C. Determination of whether, as a matter of law, a grandfathered use has been lost through discontinuation or abandonment, is a particularly fact-intensive determination. See, e.g., Derby Refining Co. v. City of Chelsea, 407 Mass 703, 709-10 (1990). In the present case, that determination would require review of a more than fifty-year period. Quite plainly, that review was never done.

In sum, it is undisputed that the ZBA never considered or decided the question of nonconforming use raised by the plaintiffs in their complaint. Because that question was not decided by the ZBA, it was not part of the ZBA's Decision, and thus is not now open to this Court for review. The plaintiffs' appeal must be denied because the ZBA correctly decided that the Zoning Bylaws do not allow for earth removal from Locus.[3]

---

[3] Other common avenues of raising this issue are also not available to the plaintiffs as part of the instant appeal. Declaratory judgment is not available because, the issue never having been raised until now, there is no evidence of an actual controversy involving the parties. See G.L. c.231A, § 1, et seq. Nor is G.L. c.240, § 14A available to the plaintiffs. Although that right of action does not require a controversy, it vests exclusive jurisdiction in the Commonwealth's Land Court. In any event, because the plaintiffs had the opportunity to raise the issue as part of their appeal to the ZBA, they may not evade mandatory administrative review by raising the issue for the first time here. See Martin v. Building Inspector of Freetown, 38 Mass.App.Ct. 509 (1995) (holding that declaratory judgment is not available until administrative review has been completed); Clark Hotel Corp. v. Building Inspector of Falmouth, 20 Mass.App.Ct. 206, 211-12 (1985) (holding that G.L. c.240, § 14A may not be used to avoid the mandatory appeal process set forth in G.L. c.40A).

C.    **In The Alternative, Should This Court Determine That The Question Of Nonconforming Use May Properly Be Raised Within The Instant Matter, The Court Should Remand The Matter To The Zoning Board Of Appeals To Determine The Facts And Decide The Question As A Matter Of Law.**

Should the Court find that that the plaintiffs have properly raised the question of nonconforming use in their complaint, by Motion for Remand filed together with their Motion for Summary Judgment the defendants have moved this Court in the alternative to remand the question of nonconforming use to the ZBA for its consideration and decision. Following are reasons in support of that motion.

Remands are ordered to give a board the opportunity "to make further findings of fact or to state more fully the reasons for its decision, or [to] instruct [ ] the board to reconsider an application in the light of stated legal principles different from those on which the board has thus far proceeded." Roberts-Haverhill Assocs. v. City Council of Haverhill, 2 Mass. App. Ct. 715, 717 (1974); see also Board of Alderman of Newton v. Maniace, 429 Mass. 726, 732-33 (1999) (noting that a "court's exercise of its remand authority is the proper, and most expeditious, remedy where any defects exist in the statement of reasons filed by a board to support its decision on a special permit application"). Remand to a board for further proceedings is appropriate when it is unclear to the reviewing court what issues were before a board of appeals, or when it is impossible to determine from a board's decision why the board denied the requested relief. See Roberts-Haverhill Assocs., supra; Croteau v. Planning Bd. of Hopkinton, 40 Mass. App. Ct. 922, 923 (1996) (rescript). Remand orders are often made because they can help preserve the proper balance between the roles of local boards and the courts. See ACW Realty Mgt., Inc. v. Planning Bd. of Westfield, 40 Mass.App.Ct. 242, 244 n.3 (1996).

As set forth above, the defendants' position on the nonconforming use question is that it is not properly part of the ZBA's decision, and thus not open to this Court's review. Should the

Court find that it may reach this question on review, however, the defendants request that the Court remand the matter to the ZBA for consideration and decision of the question. As set forth in the affidavits of the ZBA members filed herewith, it is plain that the ZBA never considered whether the plaintiffs' use began prior to adoption of the 1956 Bylaws, or whether the alleged use was continued without discontinuance or abandonment up to the present. See Pike Affidavit, ¶ 10; Hebert Affidavit, ¶ 10; Fontaine Affidavit, ¶ 10. As such questions are integral to determining whether the plaintiffs can establish a nonconforming use exemption, it follows that such a determination cannot have been part of the ZBA's decision. In such a case, it is proper to remand the matter to the ZBA for consideration of the issue. See Roberts-Haverhill Assocs., supra, at 717.

Remand is particularly appropriate in this instance because a determination of whether the plaintiffs' use is grandfathered requires a determination as to whether that use was continued without abandonment or discontinuance once established. Although the Zoning Bylaws use the term "discontinuance" rather than "abandonment", see Thielen Affidavit, Exhibit C: Building Code, Article 7, Section 1, prior to the adoption of G.L. c.40A, § 6 Massachusetts courts read "discontinuance" as "abandonment", and thus the ZBA would have to determine if the use was abandoned at any time between 1956 and 1975, when G.L. c.40A, § 6 went into effect. See Bartlett v. Board of Appeals of Lakeville, 23 Mass. App. Ct. 664, 667-68 (1987). Abandonment, as opposed to discontinuance, requires the fact-finder to determine whether there was intent to abandon the use in question. See Derby Refining Co. v. City of Chelsea, 407 Mass. at 708. Intent, or lack thereof, is typically deduced from the relevant actions of the parties, actions that in this case would have taken place in Montgomery over the last fifty years. Clearly the ZBA's knowledge of local conditions would be instrumental in interpreting such actions. For this Court

to determine the question without allowing the ZBA to decide the question initially would be to invade the sphere of administrative discretion that the mandatory review path provided by G.L. c.40A is designed to preserve.  See Davis, 52 Mass. App. Ct. at 356, n.11 (and cases cited). Remand is designed to avoid such an invasion, and for that reason is particularly appropriate here.  See ACW Realty Mgt., Inc., supra, at 244 n.3.

**D.    The Plaintiff's Claims Under 42 U.S.C. §1983 Each Fail As A Matter Of Law.**

It is black letter law that 42 U.S.C. 1983 does not, in and of itself, create substantive rights.  Rather, it simply provides a vehicle by which claims may be brought for alleged violations of rights secured by the United States Constitution.  *Albright v. Oliver,* 510 U.S. 266, 271 (1994); Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991), citing, Parratt v. Taylor, 451 U.S. 527, 535 (1981).  To proceed with a claim under 42 U.S.C. 1983, a plaintiff must first establish that a defendant is acting under color of state law.  The plaintiff must next prove that the alleged wrongful conduct resulted in a deprivation of rights secured by the United States Constitution or federal law.  Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002); Chiplin Enterprises v. City of Lebanon, 712 F.2d 1524, 1526-1527 (1st Cir. 1983).  Most important in this regard, mere violations of state law do not create constitutional claims.  *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir. 1982).

While under very limited circumstances land use claims have been allowed to proceed under 42 U.S.C. 1983, they have done so only where there are specific constitutional violations alleged.  Categories into which those violations fall include regulatory takings, see, Agins v. City of Tiburon, 447 U.S. 255 (1980); Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992); claims relating to procedural or substantive due process, see, *Chiplin Enterprises, Inc. v. City of Lebanon, supra*; *Creative Environments v. Estabrook, supra*; see also, Amsden v. Moran, 904 F.2d 748 (1st Cir. 1990), and claims wherein violations of equal protection are alleged, see,

465334

Cordeco Development Corp. v. Santiago Vasquez, 539 F.2d 256 (1st Cir. 1976). Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Town of Randolph, 932 F.2d 89 (1st Cir. 1991); see also, Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

The First Circuit has confirmed its reluctance to convert land use disputes into constitutional claims noting that absent a high bar, federal courts would "sit as a 'Zoning Board of Appeals' . . . [involved] in political disputes better left to local governments." Nestor Colon Medina & Sucesores, Inc. v. Custodio, 924 F.2d 32, 46 (1st Cir. 1992) (quoting Village of Belle Terre v. Boraas, 416 U.S. 1, 13 (1974) (Marshall, J., dissenting)). The undisputed facts in the instant case simply fail to meet, or even approach, the burden set by the Court.

1. **The Actions As Alleged Against The Defendant, Daniel Jacques, Were Not Under Color Of State Law.**

To the extent that the plaintiffs have brought suit against the defendant, Daniel Jacques, based on the alleged offer to cease his opposition to the operation of the plaintiffs' gravel pit if the plaintiffs agreed to transfer title to him, the plaintiffs' claims under 42 U.S.C. § 1983 must be dismissed. See Amended Complaint, ¶ 38. The record reveals that the defendant Jacques never used his office as a member of the Town of Montgomery Board of Selectmen to influence any decision regarding the Locus and the complaint speaks only in terms of Jacques' role as a private citizen, that is, as an abutter. Id. "In general, section 1983 is not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved in that way but for the authority of his office." Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995). The alleged offer referred to in the plaintiffs' complaint in no way depended upon the defendant, Daniel Jacques', position as a member of the Town of Montgomery Select Board. The plaintiffs' complaint does not allege the defendant, Daniel Jacques, ever insinuated that he would use his role as a member of the Select

465334

Board Member to block the operation of a gravel pit at the Locus or that he in fact did so. Even assuming that this allegation is true, it cannot form the basis of liability against the defendant, Daniel Jacques, under 42 U.S.C. § 1983.  See Id. ("[T]he acts of state officials in the ambit of their personal pursuits are not state action.") (citations omitted; internal quotation marks omitted).

1.    **The Plaintiffs Cannot Sustain Their Burden Of Showing A Violation Of The Equal Protection Clause.**

The First Circuit has long recognized the intent of the equal protection clause, to protect suspect classes and fundamental interests from inequitable treatment.  Yeradi's Moody Street Rest. & Lounge, Inc. v. Board of Selectmen of the Town of Randolph, 932 F.2d 89, 94 (1991). As the Yeradi's Court noted

> [a] party may prove that it has been singled out for different treatment in violation of the equal protection clause in the absence of some invidious classification or abuse of a fundamental right by showing, in addition to different treatment, evidence of bad faith or malicious intent to injure.  See Yeradi's II, 878 F.2d at 21 (adopting LeClair standard).    But we have indicated that such cases are infrequent.   See PFZ Properties, Inc. v. Rene Alberto Rodriguez, 928 F.2d 28, 33 (1st Cir. 1991) ("'Every appeal … from an adverse ruling … necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse … reason.  It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.'") (quoting Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982)).

Id., 923 F.2d at 94.

Stated simply, to establish a claim in this case, each plaintiff must sustain his/her burden of proof that "compared with others similarly situated, [he] was selectively treated … based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Barrington Cove Ltd. P-ship v. Rhode Island Housing & Mortgage Finance Corp., 246 F. 3d 1, 7 (1st Cir. 2001), quoting

Rubinovitz v. Rogato, 60 F.2d 906, 910 (1st Cir. 1995) (internal quotation marks omitted) (emphasis in original). See also, Tapalian v. Tusino, 377 F.3d 1, 5-6 (1st Cir. 2004).

**a.    Neither Plaintiff Can Show That They Were Treated Differently From Others "Similarly Situated".**

At the outset, it must be noted that each plaintiff's claims must be viewed independently. As of the time of the filing of the complaint, and the alleged wrongful conduct, the plaintiff, Elsie M. LaFond, owned the Locus, from which the plaintiff, Donovan Brothers, Inc., allegedly extracted gravel. SOF at ¶ 1. It is crucial to note, however, that the plaintiff, Donovan Brothers, Inc., obtains gravel from other pits within the Town of Montgomery. See Eichman Affidavit, Exhibit J at ¶ 14.

While it is true that the determination as to whether parties are "similarly situated", for purposes of equal protection is amorphous:

> [T]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the relevant aspects are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

Barrington Cove, supra, 246 F.3d at 8, quoting, Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989) (internal quotation marks omitted).

The plaintiffs simply cannot point to any others "similarly situated" so as to even allow for appropriate analysis under the test, *albeit* amorphous, as set forth above. The plaintiffs, in discovery, were specifically asked to identify those claimed to be similarly situated and responded as follows:

As to defendant, Donovan Brothers, Inc.:

QUESTION
14.    Please provide the name and address of each person whom Donovan
       Brothers believes is similarly situated to itself for purposes of

demonstrating the deprivation of equal protection alleged in the Complaint.

ORIGINAL ANSWER

I do not know all of the individuals who are similarly situated for the purposes of demonstrating a deprivation of equal protection. However, I know that the certain Selectmen, Mr. Peckham, Mr. Pomeroy and approximately two other individuals are operating active gravel pits in the Town of Montgomery at this time. As indicated above, I have purchased gravel from two of these individuals since the Cease And Desist Order has been in effect. Also, my attorney tells me that discovery is ongoing at this time and he has not yet conducted depositions or received responses to our discovery documents. I respectfully request the opportunity to supplement this answer once that discovery has been completed.

SUPPLEMENTAL AND AMENDED ANSWER TO INTERROGATORIES

There is a gravel pit on Southampton Road now or formerly known as the "Finn" gravel pit. Also, it appears that there is another pit operation that may or may not be partially in the Town of Montgomery located in the southern portion of the town. I do not know the name of the operation or the owner of that property.

As to plaintiff, Elsie M. LaFond:

QUESTION

14.    Please provide the name and address of each person whom you believe is similarly situated to you for purposes of demonstrating the deprivation of equal protection you allege in the Complaint.

ANSWER

Objection: This interrogatory calls for a legal conclusion that I believe my attorney is best able to answer. However, I know that I am not able to receive income from selling gravel when others in the Town of Montgomery are able to do so at this time.

At best, then, plaintiffs argue that the mere existence, without more, of other gravel pits in the Town satisfies the "similarly situated" component of the equal protection analysis. It is, however, undisputed that there has never been a written complaint in the nature of that proffered in this case pursuant to which the zoning enforcement officer is bound to act under state law. It cannot go unnoticed that neither plaintiff has undertaken any effort to initiate such a complaint as

against any other owner of any other gravel pit in the Town of Montgomery. Had either plaintiff

done so, then, one would have "apples to apples" upon which a comparison could be made. Id.

### i.    The Plaintiff's Residency Status Is Inapposite.

Although not specifically included with respect to the issue of identification of those

"similarly situated," the plaintiffs appear to argue that their status as non-residents is of import.

Again, by way of interrogatory, the plaintiff was specifically questioned and answered as

follows:

QUESTION
16.    Please describe in detail what, if any, residency requirement was applied
by the Defendants in taking the actions alleged in the Complaint.

ORIGINAL ANSWER
Discovery is ongoing at this time and my attorney has not conducted
depositions or received responses to discovery. I respectfully request the
opportunity to supplement this answer once that discovery has been
completed.

SUPPLEMENTAL AND AMENDED ANSWER TO INTERROGATORIES
Please see Answer #15. Additionally, there is a dual standard that has
been established for the Plaintiffs who reside outside of the Town of
Montgomery as opposed to those who are residents of the Town of
Montgomery and own property with pits and have been allowed to
continue their operations free of any oversight, supervision or *Cease and
Desist Orders*.

SECOND SET OF SUPPLEMENTAL ANSWERS TO INTERROGATORIES
To the see best of my knowledge, I am the only out of town operator and Mrs.
LaFond is the only out of town owner of property used for a gravel pit for
the time period in question. It appears that the Selectmen and, in
particular, Mr. Jacques, chose to treat me differently than other gravel pit
operators located in the same area and in the Town of Montgomery. No
other gravel pit has been served with a *Cease & Desist Order* despite the
fact that the town alleges that they are illegal in the Town of Montgomery.
Mr. Jacques along with Mr. Page attempted to purchase an interest in the
Property. He sought the advice of the Town Counsel to justify his actions
in having a *Cease & Desist Order* issued against my operations and, at the
same time, he compensated a private attorney to further the complaint
against me to the town through Mr. Page about my operations. No other
gravel pit has been subjected to this. I am the only person from out of
town. I believe that I have been treated differently than similarly situated

individuals. I am basing this upon the information that was provided to me through the discovery process, particularly the deposition transcripts of the three Selectmen as well as Mr. Page. I have also reviewed the Town's meeting minutes and records.

As to plaintiff, Elsie M. LaFond:

QUESTION
16.    Please describe in detail what, if any, residency requirement was applied by the Defendants in taking the actions alleged in the Complaint.

ANSWER
My attorney advises me that discovery is ongoing at this time and he has not yet conducted depositions or received responses to discovery. I respectfully request the opportunity to supplement this answer once that discovery has been completed.

The plaintiffs cannot point to a single case holding non-resident status to be a suspect class or impermissible consideration for purposes of equal protection analysis in a case such as this. Perhaps more important, the plaintiffs cannot point to a single fact in dispute from which a rational inference can be drawn that any act of any defendant was in any way related to the "residency" of either plaintiff. It is well settled that conclusory statements, absent factual support, are simply insufficient to support a cause of action under 42 U.S.C. § 1983, particularly with respect to equal protection claims of the nature alleged herein. Barrington Cove, supra, 246 F.3d at 5, and cases cited.

ii.    **The Failure Of The Zoning Enforcement Officer To Act With Respect To Other Gravel Pits Is Inapposite.**

Nor do the allegations of the failure of the Zoning Enforcement Officer, absent more, to affirmatively act with respect to other gravel pits aid the plaintiffs' cause. The plaintiffs bear the burden of establishing, as a matter of law, that once in receipt of the Page complaint and having made the determination to issue the order to the plaintiff, LaFond, the Town of Montgomery's Building Inspector, defendant, Elwin R. Clark, Jr., was under an affirmative obligation to investigate whether there were other gravel pits operating in Town and if so to issue appropriate

465334

orders.  The defendants are not aware of any legal basis for such an affirmative obligation on the part of the Town, its Building Inspector, or any Town board or Committee.  The other gravel pits currently operating in the Town of Montgomery may or may not constitute pre-existing, non-conforming uses under the by-law.  The defendants do not bear the burden of establishing whether or not this is so.  As stated previously, the defendants acted lawfully and as mandated by state law in response to a citizen complaint.  <u>See</u> SOF at ¶¶ 18-39.  As noted above, the plaintiffs have had and continue to have the opportunity to make a complaint with defendant Clark based on the continued operation of gravel pits within the Town of Montgomery.  Their failure to do so cannot be used as a sword against the defendants and a shield for them.

### iii.    The Fact That The Zoning Enforcement Officer And ZBA Acted On The Abutter's Complaint Is Inapposite.

It is further anticipated that the plaintiffs will claim disparate treatment based upon the fact that the Building Inspector and Zoning Board of Appeals, rather than the Select Board, acted on the abutter's complaint.  Again, however, it is indisputable that such action was based upon the advice of counsel sought by the defendant Select Board members as a result of their own determination that a conflict of interest precluded them from acting on the merits of the complaint.  SOF at 19, 21, 23-24, 32-33.  That Select Boards in the past may have mistakenly acted on matters more properly within the purview of the zoning enforcement officer, that being the Town Building Inspector, does not create an equal protection claim herein.  As the First Circuit recently recognized:

> Although a land use dispute may give rise to an equal protection claim in extreme circumstances, <u>see</u> <u>Colon</u>, 964 F.2d at 44, such circumstances are not present here.  The [Developers] allege no facts that suggest invidious discrimination based on a prohibited category such as race or sex, nor have they pointed to a egregious procedural irregularity or abuse of power that might constitute a federal equal protection violation.  <u>See Id.</u>  They assert only that they were treated differently from other individuals who lay in foundation before a permit deadline for the commencement of actual and effective construction.  That allegation,

however, "represents nothing more than a claim that [the permitting agency] departed from its own procedures or those provided by Puerto Rico law." PFZ Props., 928 F.2d at 32. Absent facts reflecting more fundamental discrimination, the plaintiffs have not stated a claim under the Equal Protection Clause of the Fourteenth Amendment.

SFW Arecibo, Ltd. v. Rodriguez, 415 F.3d 135, 141-142 (1st Cir. 2005).

Moreover, as set forth supra, reliance on prior mistaken interpretation of a by-law is misplaced. Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 162 (1997). To allow an equal protection claim to proceed on this basis would deprive the public of its right to proper enforcement of the law. Id.

**b.    The Undisputed Facts Preclude A Finding Of Malice And/Or Bad Faith.**

Even assuming that each plaintiff could prove treatment different from others "similarly situated," they cannot meet the second prong of the equal protection analysis. It appears as though the plaintiffs are alleging that the impermissible consideration at issue is "malicious or bad faith intent to injure." Barrington Cove, supra, 246 F.3d at 7. To sustain such a cause of action, the plaintiffs must prove facts sufficient to show that the deprivation of equal protection was as a result of a "malicious orchestrated campaign causing substantial harm," undertaken for a reason unrelated to a legitimate objective. Rubinovitz v. Rogato, 60 F.2d 906, 912 (1st Cir. 1995). As recently articulated by the First Circuit:

A plaintiff must establish more than that the government official's actions were simply arbitrary or erroneous; instead, the plaintiff must establish that the defendant's action constituted a "gross abuse of power." Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000); see Rubinovitz v. Rogato, 60 F.2d 906, 912 (1st Cir. 1995) (noting that "gross abuse of power" may obtain where official harbors personally hostility toward plaintiff, and undertakes a "malicious orchestrated campaign causing substantial harm"); see also Village of Willowbrook v. Olech, 528 U.S. 562, 566 (2000) (Breyer, J., concurring) (noting that some otherwise "ordinary violations of city or state law" may become actionable under the equal protection clause provided the plaintiff prove "extra factor[s]," such as "vindictive action," "illegitimate animus" or "ill will"); Esmail v. Macrane, 53 F.3d 176, 179, 180 (7th Cir. 1995) (finding viable equal protection claim based upon (i) mayor's

"orchestrated campaign of official harassment directed against [plaintiff] out of sheer malice" and (ii) "spiteful effort to 'get' [plaintiff] for reasons wholly unrelated to any legitimate state objective").

Tapalian v. Tusino, supra, 377 F.3d at 6.

By way of interrogatories, each plaintiff was asked specifically to articulate the facts upon which they base the allegation that the defendants acted with malice and/or bad faith to deprive the plaintiffs of their rights as secured under the United States Constitution and/or laws of the United States. The plaintiff, Donovan Brothers, Inc., was specifically questioned and answered as follows:

INTERROGATORY
15.    Please describe in detail what facts Donovan Brothers contends support its allegation that the Defendants, Town, or Selectmen acted with malice and/or bad faith to deprive Donovan Brothers of its rights secured under the Constitution and laws of the United States.

ORIGINAL ANSWER
My attorney tells me that discovery is ongoing at this time and he has not yet conducted depositions or received responses to our discovery. I respectfully request the opportunity to supplement this answer once that discovery has been completed.

SUPPLEMENTAL AND AMENDED ANSWERS TO INTERROGATORIES
The other similarly situated gravel pit owners and operators were operating without permit or license; further, when other similarly situated gravel pit owners and operators had disputes with neighbors or with the Town regarding their operation, it was the practice of the Town of Montgomery for the Selectmen to review the complaints and mediate the disputes between the pit operators and/or owners and the complaining party as opposed to the issuance of a *Cease and Desist Order* as was done in the case of my operation. The information that I have indicates that the other similarly situated owners and operators were residents of Montgomery and, in two instances, were relatives of certain members of the Selectmen.

Further, the Building Inspector had never operated previously in the manner in which he did when issuing the *Cease and Desist Order* to Mrs. Lafond and me. The Building Inspector and Board of Selectmen continue to allow other gravel pits to operate while maintaining such operations are not lawful under the town bylaws. The issuance of the *Cease and Desist Order* was based upon an unauthorized request for a legal opinion by a

party in interest.  The request for legal opinion and subsequent action by the Board of Selectmen was not authorized by the full Board of Selectmen.

In addition, the failure of the town either by way of a *Cease and Desist Order* or the Zoning Board of Appeals decision to clearly identify the wrongful conduct of Donovan Brothers or justify the reason for upholding the *Cease and Desist Order* while allowing other pits to operate in the town is a clear violation of my rights.  The obvious dual standard established by the Building Inspector, Zoning Board of Appeals and Board of Selectmen for the Plaintiffs as opposed to others operating pits within the town further provides a deprivation of equal protection for Mrs. Lafond and me.

<u>SECOND SET OF SUPPLEMENTAL ANSWERS TO INTERROGATORIES</u>
Now that discovery of all of the Selectmen is completed, it appears that they all are aware of the fact that there are other gravel pits operating in the Town of Montgomery at this time.  This includes one pit owned by Mr. Peckham and one by Mr. Pomeroy's father-in-law.  Additionally, it appears that Mr. Jacques and Mr. Page attempted to purchase the Property at the same time that I was negotiating the purchase of the Property. When they failed to be able to persuade Mrs. LaFond to sell them the Property, it appears from the information obtained through discovery that they worked in unison to make sure that I could not use the Property for the purposes that I had intended; namely obtaining gravel.  Review of the deposition transcripts outlines these facts and substantiates them.

The plaintiff, Elsie M. LaFond, was questioned and answered as follows:

<u>QUESTION</u>
15.    Please describe in detail what facts you contend support your allegation that the Defendants, Town, or Selectmen acted with malice and/or bad faith to deprive you of your rights secured under the Constitution and laws of the United States.

<u>ANSWER</u>
My attorney advises me that discovery is ongoing at this time and he has not yet conducted depositions or received responses to discovery.  I respectfully request the opportunity to supplement this answer once that discovery has been completed.

The undisputed facts herein, as distinct from inadmissible speculation, conspicuously

lack any of the hallmarks of a minimal malice or bad faith equal protection claim as articulated

in <u>Rubinovitz, supra,</u> and its progeny.  There is simply no allegation of any malice whatsoever on

the part of the defendant Building Inspector and/or the defendant members of the Zoning Board of Appeals, the parties who allegedly took the actions of which the plaintiffs complain.  There is no evidence whatsoever to support any allegation of any communication by and between the various defendant entities (i.e., Select Board, Zoning Board of Appeals, Building Inspector) so as to even suggest any type of campaign, let alone an orchestrated one.  SOF at ¶¶ 27, 28, 40.  Rather, the undisputed evidence reflects the efforts of all those involved to address a complaint brought to their attention by one of the Town's inhabitants.  SOF at ¶¶ 18-39.  Such allegations are grossly insufficient to support an equal protection claim.  See Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000) (noting the "marked difference between the inevitable misjudgments, wrong headedness, and mistakes of local government bureaucracies and the utterly unjustified, malignant, and extreme actions of those who would be parochial potentates"); see also Yeradi's, supra, 932 F.2d at 93 (noting that malice simply cannot be inferred from unequal treatment).

In short, the plaintiffs can provide no factual support for any allegation, as is necessary, that the malicious action of any defendant herein could be said to have caused the unequal treatment of which they complain.  See Rubinovitz v. Rogato, supra.  Rather, the plaintiffs apparently intend to rely on a position that a series of unrelated facts (i.e., that the defendant selectman, Charles Peckham, owns a gravel pit in town and defendant, Daniel Jacques, wished to purchase the property at issue) in some, unarticulated manner, caused the defendant, Building Inspector, and defendant members of the Zoning Board of Appeals to act in the manner complained of.  Such is clearly insufficient to satisfy the high bar set by the Court to establish an equal protection claim in a land use case.  See Nestor Colon Medina & Successors, supra, 924 F.3d at 46.

465334

c.    **There Is Clearly A Rational Basis For The Defendants' Actions**.

To the extent that the plaintiffs are able to clear the first two hurdles of the equal protection analysis, they simply cannot even approach the third.  The plaintiffs must show that there is "no rational basis" for the alleged difference in treatment.  Village of Willowbrook, supra, 528 U.S. 564.  The undisputed facts reveal that the Select Board determined, at the outset, that they had a conflict of interest and contacted counsel to determine the manner in which they should proceed.  SOF at 19-23.  The undisputed facts further reveal that counsel directed that the matter be addressed by the zoning enforcement officer, that being the Building Inspector.  SOF at 19, 33.  The Building Inspector then issued the order, after independent evaluation and consultation with counsel and without any evidence of any communication with any other defendant herein.  SOF at 24-28.  The Zoning Board of Appeals acted upon the appeal of the order as initiated by the plaintiffs.  Each action taken by each party was mandated by Massachusetts law.  See, G.L. c.40A.  The defendant Building Inspector acted pursuant to G.L. c.40A, § 7, which requires him to respond to a written request for enforcement of the zoning by-laws, in writing, and within 14 days by detailing his actions or reasons for his refusal to act.  See G.L. c.40A, § 7.  The defendant members of the Board of Appeals acted pursuant to G.L. c.40A, §§ 8 and 15, which requires it to hear the appeal and act within 100 days from the actions of the Building Inspector.

Moreover, the undisputed facts of this case, as are addressed *supra* relating to the zoning appeal, reveal that there was, in fact, a rational basis for the action of the Building Inspector and the Zoning Board of Appeals.  That the plaintiff disagrees with the ultimate analysis of the Zoning Board of Appeals with regard to the use of the property under the Town's zoning and general by-laws, does not an equal protection claim make.

**D.    The Defendants Submit That Application Of The Doctrine Of Qualified Immunity Precludes The Imposition Of Liability.**

In addition to the foregoing, the defendants submit that they are protected by qualified immunity which is intended to shield public officials in the course of performing discretionary acts "from civil damages liability as long as their actions could reasonably have been thought constant with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The qualified immunity defense is favored early in the proceedings so that costs and expenses of trial can be avoided where the defense is dispositive. See, Saucier v. Katz, 533 U.S. 194, 200 (2001).

Qualified immunity shields government officials from liability for civil damages when their actions "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Qualified immunity provides protection to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). The relevant question, then, is "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." McBride v. Taylor, 924 F.2d 386, 389 (1st Cir. 1991). If no constitutional rights is violated, the defendants are entitled to qualified immunity as a matter of law. Saucier v. Katz, 533 U.S. 194, 201 (2001).

For all of the reasons set forth above, qualified immunity precludes the imposition of liability in this case.

**E.    The Undisputed Facts Fail To Support A Cause Of Action Under M.G.L. c. 12, § 11I Nor The State Constitution.**

G.L. c.12, § 11I was enacted to provide a remedy co-extensive with 42 U.S.C. § 1983 with the exception of the state action requirement.  See Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-823 (1985).  Perhaps the most significant difference between claims brought pursuant to G.L. c.12, § 11I and 42 U.S.C. § 1983, is the unique requirement, pursuant to c. 12, § 11I, that the civil rights violation occur by way of "threats, intimidation, or coercion."  "Threat" has been held to "involve the intentional exertion of pressure to make another fear or apprehensive of injury or harm."  Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994).  "Intimidation" has been defined as the creation of fear to compel conduct, and "coercion" to be the active domination of another's will.  Id.  See also, Dean v. Dempsey, 403 Mass. 468 (1988).  "[A] direct deprivation of rights, even if unlawful, is not coercive because it is not an attempt to force someone to do something the person is not lawfully required to do."  See Freeman v. Planning Bd. of West Boylston, 419 Mass. 548, 565 (1995).  Additionally, if a defendant's words could reasonably be understood only to express an intention to use lawful means to achieve a goal, those words are not threats, intimidation or coercion under the Act.  See Sena v. Commonwealth, 417 Mass. 250, 263 (1993); Pheasant Ridge Assoc., Ltd Partnership v. Burlington, 399 Mass. 771, 782 (1987).

The defendants submit that the plaintiff cannot point to a single case to support the allegation that the acts, even assuming they occurred as alleged, rise to the level of threats, intimidation, or coercion.  Quite to the contrary, the Courts have consistently held that actions by municipal officials, such as those alleged herein, do not constitute such acts.  See e.g., Freeman v. Planning Bd. of West Boylston, 419 Mass. 548 555-556 (1995) (where planning board exceeded its authority by seeking a concession from the landowner, there was no "coercion");

Murphy v. Town of Duxbury, 40 Mass. App. Ct. 513, 519 (1996) (adverse administrative actions denying the plaintiff a right to build on property does not qualify as "threats, intimidation or coercion"). As such, judgment should enter in favor of the defendants as to these allegations.

Finally, the defendants submit that for the reasons as set forth above, they are entitled to qualified immunity as to the claim under G.L. c.12, § 11I. Rodriguez v. Furtado, 410 Mass. 878, 881, 885 (1991).

To the extent that the complaint is read to allege violations under the State Constitution and/or Commonwealth Declaration of Rights, judgment must enter in favor of the defendants. There is not a single case in the Commonwealth which has allowed a separate cause of action under the State Constitution and/or Commonwealth Declaration of Rights, particularly where a statutory cause of action has been fashioned. See, e.g., Martino v. Hogan, 37 Mass. App. Ct. 710 (1994). Even assuming the Court were to imply a private right of action, the facts, as alleged by the plaintiff, do not fall within the purview of either the State Constitution and/or Declaration of Rights.

## V. __CONCLUSION__

For the reasons set forth above, the defendants request that the Court grant them summary judgment on all counts of the plaintiff's Amended Complaint, and that the Amended Complaint be dismissed.

THE DEFENDANTS,
JOSEPH FONTAINE, JOANNE HEBERT
AND ROBERT W. PIKE, JR., AS THEY
ARE THE ZONING BOARD OF
APPEALS OF THE TOWN OF
MONTGOMERY, and ELWIN R. CLARK,
JR., AS HE IS THE BUILDING
INSPECTOR & ZONING
ENFORCEMENT OFFICER OF THE

TOWN OF MONTGOMERY, and WAYNE
L. MORSE, CHAIRMAN, CHARLES R.
PECKHAM, AND DANIEL JACQUES, AS
THEY ARE THE BOARD OF
SELECTMAN OF THE TOWN OF
MONTGOMERY

By their attorneys,

By___*/s/ Jonathan D. Eichman*_____
Joel B. Bard (BBO# 029140)
Jonathan D. Eichman (BBO# 641227)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, Massachusetts 02116
Phone (617) 556-0007

By___*/s/ Nancy Frankel Pelletier*_____
Nancy Frankel Pelletier, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.:  544402
npelletier@robinson-donovan.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 30, 2006.

_____*/s/ Nancy Frankel Pelletier*_____
Nancy Frankel Pelletier, Esq.