UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-30136-MAP

DONOVAN BROS, INC., and
ELSIE M. LAFOND,

      Plaintiffs

vs.

JOSEPH FONTAINE, JOANNE HEBERT, and
ROBERT W. PIKE, JR., as they are the
Zoning Board of Appeals of the Town of Montgomery;
ELWIN R. CLARK, JR., as he is the Building Inspector &
Zoning Enforcement Officer of the Town of Montgomery; and
WAYNE L. MORSE, Chairman, CHARLES R. PECKHAM, and
DANIEL JACQUES, as they are the
Board of Selectmen of the Town of Montgomery,

      Defendants

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DEFENDANT'S MOTION IN THE ALTERNATIVE FOR REMAND**

**INTRODUCTION**

      This matter is an appeal from the decision of the Defendant, Montgomery Zoning Board of Appeals, upholding a Cease and Desist order issued by the Montgomery Building Inspector (acting as the Zoning Enforcement Officer) against the Plaintiffs, Donovan Brothers, Inc. and Elsie LaFond, prohibiting them from operating their gravel bank on Carrington Road, Montgomery. The Cease and Desist Order notified the Plaintiffs that upon the Zoning Enforcement Officer's review of the Town's records and zoning bylaws that the operation of said property as a gravel pit is unlawful.

Upon receiving the Cease and Desist Order, the Plaintiffs filed their appeal of said Cease and Desist Order with the Montgomery Zoning Board of Appeals. At the Hearings held before the Montgomery Zoning Board of Appeals on Plaintiffs' appeal of the Cease and Desist Order, held on March 15, 2005 and April 14, 2005, the Plaintiffs through their counsel presented their contention that the use of the Subject Premises as a gravel pit commenced prior to the existence of any town by-laws, and that therefore the pit was exempt from control. The Plaintiffs through their counsel also presented their case at said hearing that the Montgomery Zoning By-Law, as amended, provided that gravel pits were an unregulated and allowed use of property in Montgomery. After hearing all the testimony from both sides regarding the legality of the gravel pit operation on the Subject Premises, the Montgomery Zoning Board issued its decision upholding the Building Commissioner's Cease and Desist Order.

The Plaintiffs then filed their Complaint appealing the Decision of the Defendant Zoning Board of Appeals in the Hampden County Superior Court. Said Complaint included allegations that the Decision upholding the Cease and Desist Order constituted a denial of the Plaintiffs' rights to equal protection under the law as guaranteed by the State and Federal Constitutions, as said Order and Decision of the Defendants constituted the singling out of the Premises for different treatment from that accorded to other similar lands within the Town of Montgomery indistinguishable from the Premises in kind and character, as well as the disparate treatment of the Plaintiffs compared to others similarly situated within the Town of Montgomery.

The Defendants removed the case to the Federal District Court on this federal issue, and then filed their Motion to Dismiss the Complaint for failure to state a claim upon which relief may be granted. The Plaintiffs opposed the Motion to Dismiss, and filed their Motion to Amend their Complaint, to include a second Count specifically including the Montgomery Board of Selectmen as defendants in their equal protection claim. After hearing, the Court denied the Defendants' Motion to Dismiss and allowed the Plaintiffs' Motion to Amend their Complaint.

The parties have since conducted discovery, and the Defendants have now moved for Summary Judgment against the Plaintiffs on the grounds that:

* there is no evidence that the gravel pit operation is an allowed use under the Montgomery Zoning Bylaws;

* there is no evidence that the gravel pit operation is a legal pre-existing, non-conforming use (i.e., a "grandfathered use");

* alternatively, if the Court finds that there is evidence that the gravel pit operation was a legal pre-existing non-conforming use, the Court should remand the case to the Montgomery Zoning Board of Appeals because they did not rule on this issue; and

* there is no evidence to support the Plaintiffs equal protection claim.

As the Discussion below shall establish, the Defendant's Motion to Dismiss must be denied because the facts, circumstances and reasonable inferences therefrom provide that:

1) the Subject Premises had been used continuously as a gravel pit since at least 1955, prior to the enactment of the Montgomery Zoning Ordinances in 1956, and hence is protected as a legal, pre-existing non-conforming "grandfathered" use;

2) the policy and custom of the Town of Montgomery demonstrates and provides that when the Montgomery Zoning Ordinance was amended in 1971 to eliminate the removal of gravel, loam and stone as a use requiring "Special Authorization" from the Board of Appeals, gravel pits became an unregulated use under the Zoning Bylaw;

3) the Plaintiffs presented both of these arguments to the Zoning Board of Appeals, and evidence on these arguments was presented to the Zoning Board of Appeals from both sides of the dispute. Even if the Board of Appeals inexplicably did not rule on these issues, a remand to the Board of Appeals, further delaying the Plaintiffs ability to continue their gravel pit activity on the Subject Premises, is unwarranted and frustrates the purpose of *de novo* judicial review; and

4) there are more than sufficient disputed facts and evidence regarding the Plaintiffs' equal protection claim to be tried before a jury.

## STATEMENT OF FACTS

The Statement of Material Facts of Record as to Which There Exists a Genuine Issue to Be Tried are set forth in the Plaintiffs' Local Rule 56.1 Statement with attached exhibits, filed herewith and incorporated by reference herein.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995) (quoting Fed.R.Civ.P. 56(c)), cert. denied, 116 S.Ct. 914 (1996). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir.1990); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour, 63 F.3d at 37, quoting, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). However, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." Barbour, supra.

## DISCUSSION

I. **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THE EVIDENCE PROVIDES THAT THE USE OF THE SUBJECT PREMISES AS A GRAVEL PIT IS PROTECTED AS A PRE-EXISTING NON-CONFORMING "GRANDFATHERED" USE**

It is a basic principle of constitutional law that property of an individual may not be taken without due process of law. See, e.g., Shrewsbury Edgemere Assoc. Ltd. Partnership v. Board

4

of Appeals of Shrewsbury, 409 Mass. 317, 565 N.E.2d 1214 (1991).  As this principal applies to zoning law, zoning regulations which prohibit the continuation of lawful business uses within a zoned area are held unconstitutional as a taking of property without due process and as an unreasonable exercise of the police power.  Id.  In order to uphold the constitutionality of such ordinances, such pre-existing non-conforming uses must be protected, because their continued existence avoids governmental "taking" of established interests or uses of the property owner.  Id.  This principle is well recognized in Massachusetts, and is specifically set forth as a protection of such interests in M.G.L. c. 40A, § 6.

More specifically, M.G.L. c. 40A, § 6 provides that "...a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun..."  Hence M.G.L. c. 40A, § 6, assumes a very real significance once it is understood that a city or town cannot adopt a new or amended zoning ordinance or by-law which conflicts with pertinent enabling legislation of general application.  Bartlett v. Board of Appeals of Lakeville, 23 Mass.App.Ct. 664 (1987), citing, Planning Bd. of Reading v. Board of Appeals of Reading, 333 Mass. 657, 660, 132 N.E.2d 386 (1956), and cases cited.  In order to determine whether the use of the Subject Premises as a gravel pit constitutes a legal pre-existing non-conforming use, one examines whether the use as a gravel pit pre-dated the enactment of the first zoning ordinance regulating such activity.  Id.

In the present case, the first such enactment of a zoning ordinance took place in July of 1956.  Further, the 1956 ordinance itself specifically set forth the protections for pre-existing non-conforming uses required by constitutional and statutory principles.  Therefore, if there is evidence that the Subject Premises at Carrington Road was being used as a gravel pit prior to 1956, said property cannot be required to comply with the permit procedures of the ordinance, and would continue as a lawful use without a license or permit.  The 1956 ordinance, therefore, legitimized any pre-existing uses that were not in conformance with zoning on the date of the adoption of the ordinance.  This legitimization provides this use a "legally existing" status for all

subsequent ordinances and enactments, with the resultant protections afforded by this status. Id.

As provided by the Affidavits submitted by Gayle Donovan and Sonny LaFond, as well as the Interrogatory Answers of Donovan Brothers, Inc., the Subject Premises has been used as a gravel pit on a continuous basis since at least 1955 through to the present, until issuance of the Cease and Desist Order. Indeed, Selectman Charles Peckham, who resides on Carrington Road and who frequented Carrington Road since the 1950's, specifically testified at his deposition that the Subject Premises was continuously used each year as a gravel pit since 1955. Both the prior owners of the property, the LaFond family, as well as Donovan Brothers, Inc., used the Subject Premises for gravel removal commencing 1955, as well as other individuals and entities. At no time from 1955 to the present was the gravel operation stopped or abandoned by the LaFonds or Donovan Brothers. Hence, the evidence in this case provides that the use of Subject Premises as a gravel pit is entitled to protection under M.G.L. c. 40A, § 6, as a legal pre-existing non-conforming use.

Further, summary judgment cannot be entered against the Plaintiffs on the grounds that there was any alleged "abandonment" of the use of the Subject Premises as a gravel pit. An abandonment of a nonconforming use results from concurrence of intent to abandon and voluntary conduct which carries implication of abandonment. Cape Resort Hotels, Inc. v. Alcoholic Licensing Bd. of Falmouth, 385 Mass. 205, appeal after remand 388 Mass. 1013 (1982). A sale of the property protected as a nonconforming use does not establish an abandonment of that use. Id. For a finding of discontinuance of a nonconforming use, there must be evidence of "abandonment," that is, intent to abandon and voluntary conduct carrying that implication. Dobbs v. Board of Appeals of Northampton, 339 Mass. 684 (1959).

The case of Town of Wayland v. Lee, 325 Mass. 637 (1950), exemplifies these principals in the context of a property being used for earth removal operations. In this case, the evidence established that the property had been used as a gravel pit, with heavy machinery being used for

6

the extraction of earth. For a few years, earth was only removed by hand shovel, and the owner of the property had sold the equipment that had been used previously to extract earth. The Supreme Judicial Court held that this evidence did not suffice to establish abandonment of the use of such equipment at the site, and a successor in interest was entitled to make use of such equipment ordinarily used in such pits. Id.

The same holds true in the present case. Indeed, the facts are much stronger that no abandonment of the use of the Subject Premises as a gravel pit occurred in the present case. To the extent that Defendants might rely on the testimony of Selectmen Peckham that Donovan Brothers may have skipped using the Subject Premises as a gravel pit for a two or three year period (Exhibit O, p. 86), this testimony was directly contrary to his earlier extensive testimony that the Subject Premises was continuously used each year as a gravel pit from 1955 to present. (Exhibit O, pp. 37- 40, 78-85). Further, it should be noted that this later testimony was obtained only after intensive re-questioning of Selectman Peckham regarding this issue by his own counsel. (Exhibit O, pp. 78-86). Certainly this self-contradictory testimony does not provide undisputed evidence that the "grandfathered" use of the Subject Premises had ever been abandoned for purposes of Defendants' Motion for Summary Judgment. Finally, this evidence, even if it was not self-contradictory, is certainly contradictory to the Affidavits of Gayle Donovan, Sonny LaFond and Fred Brewster that the Subject Premises had been used continuously as a gravel pit since 1955 without any abandonment of that use.

Accordingly, the overwhelming evidence provides that the Subject Premises was used as a gravel pit prior to the enactment of the Montgomery Zoning Ordinance regulating earth removal operations. Further, the overwhelming evidence provides that no abandonment of this use occurred regarding the Subject Premises. Accordingly, the use of the Subject Premises as a gravel pit is constitutionally, statutorily and by Montgomery Zoning ordinance, protected as a legal pre-existing non-conforming use.

Therefore, the Cease and Desist Order prohibiting the use of the Subject Premises as a gravel pit and the Zoning Board of Appeals Decision upholding said Cease and Desist Order was erroneous as a matter of fact and law. By all of the above, Defendants' Motion for Summary Judgment must be denied.

II.    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THE EVIDENCE PROVIDES THAT THE UNINTERRUPTED POLICY AND CUSTOM OF THE TOWN OF MONTGOMERY THAT GRAVEL PITS WERE AN ALLOWED AND UNREGULATED USE WAS APPLIED TO THE SUBJECT PREMISES SINCE THE 1971 AMENDMENT TO THE ZONING ORDINANCE UNTIL THE INSTANT COMPLAINT, AND WHICH IS STILL APPLIED TO ALL OTHER GRAVEL PITS OPERATING WITHIN THE TOWN OF MONTGOMERY**

The first Montgomery Zoning By-Law, enacted in 1956, specifically provided that "gravel, loam, sand and stone removal" was allowed on "Special Authorization" by the Board of Appeals. The amendment to the Montgomery Zoning By-law enacted in 1971 deleted gravel, stone and loam removal activities from its list of uses requiring "Special Authorization." Since the elimination of gravel pits as a specified use under the "Special Authorization" section of the Montgomery Zoning Ordinance in 1971, it has been the uninterrupted custom and policy of the Town of Montgomery for some 35 years that gravel pits were an unregulated and allowed use of property in Montgomery.

Courts consider the question whether a particular use is customary where the zoning ordinance does not specify what types of uses are permitted. Cunha v. New Bedford, 47 Mass.App.Ct. 407, 713 N.E.2d 385 (1999). Moreover, Courts extend a measure of deference to the determinations of local officials on issues of local enforcement, particularly where the essential question requires a factual determination of what is customary. Sacco v. Inspector of Bldgs. of Brockton, 3 Mass.App.Ct. 749, 749-750, 327 N.E.2d 924 (1975).

Similarly, the Massachusetts Supreme Judicial Court has applied the laches theory and

permitted the use of laches as a defense against a Zoning Board. Chilson v. Zoning Board of Appeal of Attleboro, 344 Mass. 406, 409-10 (1962) (holding that "the rule that a municipality may not be estopped or barred by laches is inapplicable"). In Chilson, upon the neighbors' filing of the petition, Chilson had been using the non-conforming use which was approved by the inspector of buildings for nine (9) years. The Court held that "it would be unjust and unreasonable to upset the informal decision of the enforcing officer in respect thereof in this suit by owners of other property in the neighborhood." Id. at 409. See also, Dresser v. Inspector Buildings of Southbridge, 348 Mass. 729 (1965) (holding that as there was no delay shown or inferable the court will not even address whether the principle of Chilson could be applicable; Cape Resort Hotels, Inc. v. Alcoholic Licensing Bd. of Falmouth, 385 Mass. 205, 224-25 (1982) (distinguishing the Court's ruling in Chilson by stating that in that case, the Court found that the non-conforming use was "colorably within the exemption applicable to nonconforming uses").

The same holds true in the present case. Given the long standing use of the Subject Premises as a gravel pit, and the long-standing policy of the Town that gravel pits are an unregulated use under the Zoning By-laws, it would be unjust and unreasonably to prohibit such use at this time. Even Selectman Jacques acknowledged that the Subject Premises had been used for this purpose during his 13 years as an abutter to the Subject Premises.

The undisputed evidence in the present case provides that for over 35 years, since the amendment to the Montgomery Zoning Ordinance eliminated gravel, loam and stone removal as a specific use required by "Special Authorization" by the Board of Appeals, that it was the uninterrupted custom and policy of the Town of Montgomery that gravel pits were an allowed and unregulated use. It was not until Selectman Daniel Jacques, acting as an a Selectmen, caused a change in that Town policy, wherein the Zoning Enforcement Officer now determined that said use as a gravel pit was now required to have such Special Authorization. However, this policy has only been selectively imposed upon the Subject Premises, which abuts Selectman Jacques

9

premises. Based on the above, the Court should consider the long-standing policy of the Town of Montgomery that gravel pits are an unregulated use in Montgomery, and hold that the use of the Subject Premises is allowed under the Montgomery Zoning Bylaws.

The facts and circumstances in the present case, and the reasonable inferences therefrom, provide that Defendant's Motion for Summary Judgment must be denied on the grounds that the uninterrupted policy and custom of the Town of Montgomery was that it interpreted its own by-laws as permitting gravel pits without regulation, which was applied to the Subject Premises since 1971 when the Zoning Ordinance was amended until the instant complaint, and which is still applied to all other gravel pits operating within the Town of Montgomery. Colangelo v. Board of Appeals of Lexington, 407 Mass. 242, 245-46, 552 N.E.2d 541, 544 (1990) (board's denial of zoning exemption due to traffic conditions was arbitrary where inconsistent with prior and later decisions of the board); Town of Marblehead v. Deery, 356 Mass. 532, 254 N.E.2d 234 (1969); Chilson v. Zoning Bd. of Appeal of Attleboro, 344 Mass. 406, 182 N.E.2d 535 (1962) (municipality estopped from asserting that relocation of nonconforming use required a special permit when building inspector previously allowed structure associated with use to be moved without permit); see also, Elder Care Servs., Inc. v. Zoning Bd. of Appeals of Hingham, 17 Mass.App.Ct. 480, 482, 459 N.E.2d 832, 834 (1984) (municipal board estopped from contending that constructively granted special permit use was unauthorized by the zoning bylaw).

### III. GIVEN THE *DE NOVO* REVIEW OF ZONING DECISION UNDER M.G.L. C. 40A, § 17, REMAND SHOULD NOT BE ENTERED TO THE BOARD OF APPEALS IN THIS CASE FOR ITS PURPORTED FAILURE TO CONSIDER THE PLAINTIFFS' ARGUMENT THAT THE USE OF THE SUBJECT PREMISES AS A GRAVEL PIT EXISTED PRIOR TO THE ENACTMENT OF THE MONTGOMERY ZONING ORDINANCE

The scope of the Court's review in the appeal of a Zoning Board decision is established under G.L.c. 40A, § 17. "On appeal to the . . . [c]ourt, the judge is required to hear the matter de

novo and determine the legal validity of the decision of the board upon the facts found by him. . . In making his findings, the judge is not allowed to give the board's findings or decision evidentiary weight. . . , nor may he make findings which, in substance, constitute mere repetition of statutory words." Josephs v. Board of Appeals of Brookline, 362 Mass. 290 (1972).  See also, Prudential Insurance Co. of America v. Board of Appeals of Westwood, 23 Mass.App.Ct. 278 (1986); Garvey v. Board of Appeals of Amherst, 9 Mass.App.Ct. 856 (1980).  Once independent findings of fact are made, the trial judge then determines the validity of the Board decision. Willard v. Board of Appeals of Orleans, 25 Mass. App. Ct. 15 (1987).  Under this section, the Court finds facts *de novo* and measures the legal sufficiency of the Board of Zoning appeals' decision against the Court's findings of fact rather than against those of the Board.  Green v. Board of Appeals of Provincetown, 26 Mass. App. Ct. 469 (1988).

No special weight is attached to the conclusions of law or findings of fact of the board of appeals on judicial review -- the trial court hears matters *de novo* and determines legal validity of decision of the Board upon facts which the Court finds.  Needham Pastoral Counseling Center, Inc. v. Board of Appeals of Needham, 29 Mass. App. Ct. 31 (1990).  In a zoning appeal to the Superior Court, the decision of the Board is no more than a report of an administrative body having no evidentiary weight on appeal.  Devine v. Zoning Bd. of Appeals of Lynn, 332 Mass. 319 (1955).

In an appeal from a Zoning Board decision, the judge must determine the facts for himself on evidence introduced before him and then apply governing principals of law and, having settled the facts and the law, must inspect decision of the zoning board and enter such decree as justice and equity may require in accordance with his determination of the law and facts.  Josephs v. Board of Appeals of Brookline, 362 Mass. 290 (1972);  Blackmun v. Board of Appeals of Barnstable, 334 Mass. 446 (1956).

In the present case, the Defendants argue, in the alternative, that they should be allowed

to re-hear the Plaintiffs' contention that the use of the Subject Premises as a gravel pit pre-existed the enactment of the Montgomery Zoning Ordinance because they allege that they did not consider this issue when rendering its decision upholding the Cease and Desist Order.

However, as provided by Affidavits and the testimony of Selectmen Peckham, this issue was presented to the Board of Appeals by the Plaintiffs and witnesses at said hearings. The Town of Montgomery should not be allowed to unduly delay judicial review of the Plaintiffs' appeal of the Cease and Desist Order by its own inexplicable failure to make an adequate decision. To allow such a remedy would encourage faulty decisions imposed simply to delay a landowner's use of property.

The inappropriateness of remand is particularly true in cases such as the present case, where *de novo* review renders the Board of Appeals factual findings essentially irrelevant. The Court is to hear the evidence and make its own factual findings, then determine whether the Board of Appeals decision upholding the Cease and Desist Order was supported by the evidence submitted at trial and is otherwise in accordance with law. Remand to the Board of Appeals at this late date would simply constitute a waste of judicial resources and unduly delay judicial review of the Plaintiffs' claim that the Cease and Desist Order must be vacated. By all of the above, the Defendant's Motion in the alternative for Remand must be denied.

### IV. THERE ARE MORE THAN SUFFICIENT DISPUTED FACTS AND EVIDENCE REGARDING THE PLAINTIFFS' EQUAL PROTECTION CLAIM TO BE TRIED BEFORE A JURY

Pursuant to its appeal of the issuance of a Cease and Desist Order upon Donovan's earth removal operations, Donovan asserted in its original Complaint (as further elaborated in its Amended Complaint) that said Cease and Desist Order "constitutes a denial of the Plaintiffs' rights to equal protection under the law as guaranteed by the State and Federal Constitutions, as said Order and Decision of the Defendants constitutes the singling out of the Premises for

different treatment from that accorded to other similar lands within the Town of Montgomery indistinguishable from the Premises in kind and character, as well as the disparate treatment of the Plaintiffs compared to others similarly situated within the Town of Montgomery." Although Donovan's equal protection claim (Count II) alleges a violation of the equal protection clauses of both the United States Constitution and the Massachusetts Declaration of Rights, courts generally will refer simply to the federal Equal Protection Clause since "equal protection of the law considerations are substantially the same under the State and Federal Constitutions." Vickowski v. Hukowicz, 201 F.Supp.2d 195 (D.Mass., Mar 13, 2002); Baird v. Attorney General, 371 Mass. 741, 360 N.E.2d 288, 300 (1977). Generally, in order to succeed on equal protection claims, a Plaintiff must show (1) that "compared with others similarly situated," he "was selectively treated" and (2) "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen of Randolph, 932 F.2d 89, 94 (1st Cir.1991).

In the present case, Plaintiffs assert both a "classic" equal protection claim wherein one class of persons is allegedly treated differently than another class (residents versus non-residents), as well as a so-called *class of one* equal protection claim. The Equal Protection Clause safeguards not merely against invidious classifications such as race, but also against "any arbitrary classification of persons for unfavorable governmental treatment." See, e.g., Hayden v. Grayson, 134 F.3d at 453 n. 3. Hence, although the Equal Protection Clause is more commonly invoked on behalf of a person who belongs to a vulnerable group, it also "gives rise to a cause of action on behalf of a 'class of one' where the plaintiff [does] not allege membership in a class or group" but asserts "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that a homeowner alleging that she

13

was arbitrarily deprived of a water connection because of ill will generated by prior litigation stated a claim for relief under rational equal protection analysis). As the Supreme Court in Willowbrook reiterated, "The purpose of the equal protection clause of the Fourteenth Amendment is to secure *every person* within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Id. at 564 (emphasis supplied).

There are at least six other persons who use and operate their properties as gravel banks in Montgomery without a permit, license or special permit, who have not been issued Cease and Desist Orders despite complaints having been made to the Town of Montgomery by their neighbors. At least two of these gravel banks are located on the same road as the Subject Premises, Carrington Road. These two properties are owned by Montgomery Town Selectman Charles Peckham, and Thomas Pomeroy, who is the Father-in-Law of Montgomery Town Selectman, Wayne Morse. There is another gravel bank located on Southampton Road; and another located on the southern portion of the Town. The Plaintiffs' gravel pit/earth removal operations on the Subject Premises is similarly situated in all relevant respects to those other gravel pits/earth removal operations that have been and are presently operating within the Town of Montgomery. All such gravel pits are used for the commercial removal of gravel, sand and loam. The Zoning Enforcement Officer acknowledged that these other gravel pits were similar in all material respects. Despite the similar nature and use of the Subject Premises and those other gravel pit/earth removal operations in the Town of Montgomery, the Defendants selectively imposed a Cease and Desist Order upon the Plaintiffs, ordering the Plaintiffs to cease and desist from using the Subject Premises as a gravel pit. The Plaintiff is the only non-resident owner/operator of a gravel bank in Montgomery, and said Subject Premises is the only gravel bank in Montgomery to have ever been issued a Cease and Desist Order.

Other similarly situated gravel pit owners and operators have been and are continued to

be allowed to operate in the Town of Montgomery without restriction or requirement for a permit or special permit under the Zoning Bylaw for the Town of Montgomery. When other similarly situated gravel pit owners had disputes with neighbors it was the practice and procedure of the Town of Montgomery through its Selectmen to mediate the disputes between the parties, and otherwise advise the neighbors that there are no ordinances or bylaws that control the operation of gravel pits in Montgomery. Hence, the dual standard and selective treatment imposed by the Defendant Building Inspector & Zoning Enforcement Officer, the Defendants deprived the Plaintiffs of equal protection of the laws.

It is important to consider the evidence that Selectman Daniel Jacques and one Mr. Dennis Page attempted to purchase the Subject Premises at the same time the Plaintiff, Donovan Brothers, Inc. negotiated and entered into its purchase and sale agreement with the Plaintiff, Elsie LaFond. Selectman Jacques advised Selectman Peckham of his plan to purchase the subject premises prior to the issuance of the Cease and Desist Order. When Selectman Jacques and Mr. Page failed in their attempt to purchase the property themselves, they worked in unison to frustrate the Plaintiffs' ability to continue to use the Subject Premises as a gravel pit. Selectman Jacques advised Selectman Peckham that Selectman Jacques, along with other neighbors, met with Mr. Donovan regarding his gravel pit operation on the Subject Premises, and that Selectman Jacques was unhappy about the outcome of that meeting. According to his own testimony, as well as the testimony of others, Selectman Jacques, *acting in his capacity as a member of the Board of Selectmen*, then obtained the advice of Town Counsel in his campaign against the Plaintiffs' continued operation of the Subject Premises, and during the same period of time covertly hired private counsel with Mr. Page in order to effectuate the same agenda.

More specifically, Selectman Jacques and Mr. & Mrs. Page retained Attorney Costa to represent them regarding their campaign against the Plaintiffs' operation of the Subject Premises as a gravel pit. Attorney Costa and Selectman Jacques had gone to school together. Although

15

Selectman Jacques was paying 50% of Attorney Costa's legal fees, Selectman Jacques was not publicly named as a complaining party on the Request for a Cease and Desist Order.

It is also important to note that prior to the delivery of the Request for a Cease and Desist Order to the Montgomery Zoning Enforcement Officer, the Board of Selectmen were aware that Mr. Dennis Page would be bringing a complaint to the Board of Selectmen regarding the use of the Subject Premises as a gravel pit. Also prior to the delivery of the Request for the Cease and Desist, the Montgomery Board of Selectmen discussed the gravel pit operation at the Subject Premises at a public hearing, wherein Selectman Daniel Jacques, who is an abutter to the Subject Premises expressed his negative view of the gravel pit operation.

Tellingly, the Zoning Enforcement Officer admitted that he did not determine or otherwise have knowledge as to when the Subject Premises was first used as a gravel pit, in order to determine whether it was a grandfathered use. The Zoning Enforcement Officer did not examine the Montgomery Zoning By-laws until after he had issued his Cease and Desist Order. The Zoning Enforcement Officer did not do any research to determine whether the Subject Premises had a permit or license from the town to operate a gravel pit. Rather, the issuance of the Cease and Desist Order came without due investigation at the behest of the Request for the Cease and Desist, facially on behalf of Mr. & Mrs. Page, but which Selectman Jacques was participating in paying 50% of the attorney's fees, which attorney had gone to school with Selectman Jacques.

The day after the Montgomery Zoning Enforcement Officer served notice of his Cease and Desist Order regarding the Subject Premises, the Zoning Enforcement Officer met with Selectman Charles Peckham at a time when Selectman Peckham was working in his own gravel pit. During said meeting the Zoning Enforcement Officer advised Selectman Peckham that he had issued the Cease and Desist Order regarding the Subject Premises, and that he was uneasy about issuing the Cease and Desist Order. In particular, the Zoning Enforcement Officer advised

Selectman Peckham that he was uneasy about "the way it was handled, that it was never handled that way in the past, and why give it to one pit and not the rest of the pits?"

During a meeting held by the Montgomery Board of Selectmen, the Selectmen discussed the Subject Premises, wherein Selectman Wayne Morse stated that he "had a problem with some of the language on the cease and desist and such." During meetings held by the Montgomery Board of Selectmen, Selectman Daniel Jacques expressed his strong opinion in favor of the Cease and Desist Order, that he was upset about the gravel pit operation on the Subject Premises, and that he didn't want the pit there. Accordingly to one member of the Board of Appeals, no other such complaints were made because, "the select board, one of the people owns a gravel bank, and the other one his father-in-law owns the gravel bank, so you know."

A "class of one" equal protection claim exists "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 104 (1st Cir.2002). To prevail on a "class of one" discrimination claim *under* Willowbrook, Donovan must prove that:

1) the Defendants intentionally treated Donovan differently

2) from others similarly situated, and

3) without a rational basis for the difference in treatment.

Within the First Circuit there has been conflicting decisions regarding the Willowbrook decision. The First Circuit Court of Appeals has held and restated the Willowbrook holding that courts should carry out the "class of one" discrimination analysis "without regard to subjective motivation." Burns v. State Police Ass'n of Mass., 230 F.3d 8, 12 n. 4 (1st Cir.2000). On the other hand, the Court of Appeals held in Barrington Cove Ltd. Partnership v. Rhode Island Housing and Mortgage Finance Corp., 246 F.3d 1 (1st Cir.2001) that, in order to establish an

17

equal protection claim, a plaintiff must prove that:

> compared with others similarly situated, [she] was selectively treated ⋯ based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Id. at 7 (emphasis in original), quoting, Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir.1995)).  In summary, under the Barrington Cove case, the following elements are necessary to establish an equal protection/disparate treatment claim:

1) that Plaintiffs were intentionally treated differently

2) from others similarly situated

3) without a rational basis for that difference in treatment, and

4) that the difference in treatment was due to malicious or bad faith intent on the part of the defendants to injure them.

A "class of one" equal protection claim is viable where the plaintiff adduces sufficient evidence from which a reasonable jury could conclude that, "compared with others similarly situated, [plaintiff] was selectively treated ⋯ based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious or bad faith intent to injure* [the plaintiff]." ' Tapalian, 377 F.3d at 5 (emphasis added); quoting, Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortgage Fin. Corp., 246 F.3d 1, 7 (1st Cir.2001).  "Normally, such a plaintiff must establish more than that the government official's actions were simply arbitrary or erroneous; instead, the plaintiff must establish the defendant's actions constituted a 'gross abuse of power.'" Tapalian, 377 F.3d at 5-6 (citing Baker v. Coxe, 230 F.3d 470, 474 (1st Cir.2000)); Rubinovitz v. Rogato, 60 F.3d 906, 912 (1st Cir.1995) ("gross abuse of power" may be found where an official harbors personal hostility toward plaintiff, and undertakes a "malicious orchestrated campaign causing substantial harm"); Esmail v. Macrane, 53 F.3d 176, 179-80 (7th Cir.1995) (finding viable equal protection claim based upon (i) mayor's

"orchestrated campaign of official harassment directed against [plaintiff] out of sheer malice" and (ii) "spiteful effort to 'get' [plaintiff] for reasons wholly unrelated to any legitimate state objective").

In the present case, there is more than sufficient evidence of "bad faith" by the Town's selective treatment of the Subject Premises on behalf of Selectman Jacques. Indeed, it is clear that this case involves more than simply "wrongheadedness" on the part of the Selectmen. Rather, we have direct evidence of detailed bad faith motivations of multiple Selectmen that have specifically targeted Donovan's operation for selective treatment for improper purposes.

A local government is liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" alleged by the suit. Welch v. Paicos, 66 F.Supp.2d 138 (D.Mass.,1999), citing, Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); see also, Manarite v. City of Springfield, 957 F.2d 953, 958 (1st Cir.1992), citing, City of Canton v. Harris, 489 U.S. 378, 385 (1989). The First Circuit has held that in order to succeed under 42 U.S.C. § 1983 on a theory of municipal liability, the plaintiff must show:

1) a municipal custom or policy, and

2) that this custom or policy was "the cause of and the moving force behind the deprivation of constitutional rights."

Comfort v. Town of Pittsfield, 924 F.Supp. 1219, 1233 (D. Me. 1996), citing, Bordano v. McLeod, 871 F.2d 1151, 1156 (1st Circuit 1989).

In the present case, the Defendants are the highest elected and appointed officials in the Town of Montgomery; hence their actions may fairly be said to be those of the Town, and the Town therefore may be held liable for their decisions. Welch v. Paicos, 66 F.Supp.2d 138 (D.Mass.,1999). In order to further their own purposes, the Selectmen have selectively changed a long-standing policy existing for over 35 years that gravel pits are an unregulated use of property

in Montgomery in order to suit their personal agenda.  Since the actions in question are those of the Town's top policymakers acting in their policymaking capacities, the Town itself is liable for violation of § 1983.  Id.

## CONCLUSION

By all of the above, Defendants' Motion for Summary Judgment, or in the alternative for Remand, must be denied.

>
> The Plaintiffs,
> DONOVAN BROS, INC., and
> ELSIE M. LAFOND,
>
>
> By: S/    *Frank E. Antonucci*
> FRANK E. ANTONUCCI, ESQ.
> ANTONUCCI & ASSOCIATES
> 83 State Street, Suite 203
> Springfield, MA  01103
> Tel: (413) 737-4667
> Fax: (413) 731-0602
> BBO# 020260

## CERTIFICATE OF SERVICE

I, Frank E. Antonucci, Esq., do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those indicated as non-registered participants on January 16, 2007.

> S/    *Frank E. Antonucci*
> FRANK E. ANTONUCCI, ESQ.
> ANTONUCCI & ASSOCIATES
> 83 State Street, Suite 203
> Springfield, MA  01103
> Tel: (413) 737-4667
> Fax: (413) 731-0602
> BBO# 020260