UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-30136-MAP

DONOVAN BROS, INC., and
ELSIE M. LAFOND,

      Plaintiffs

vs.

JOSEPH FONTAINE, JOANNE HEBERT, and
ROBERT W. PIKE, JR., as they are the
Zoning Board of Appeals of the Town of Montgomery;
ELWIN R. CLARK, JR., as he is the Building Inspector &
Zoning Enforcement Officer of the Town of Montgomery; and
WAYNE L. MORSE, Chairman, CHARLES R. PECKHAM, and
DANIEL JACQUES, as they are the
Board of Selectmen of the Town of Montgomery,

      Defendants

**PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS
OF RECORD AS TO WHICH THERE EXISTS A GENUINE ISSUE TO BE TRIED**

Now come the Plaintiffs in the above-captioned matter and, pursuant to Local Rule 56.1, hereby submit their Statement of Material Facts of Record as to Which There Exists a Genuine Issue to be Tried, filed in Opposition to Defendant's Motion for Summary Judgment:

1.     The entire property of the Subject Premises has been used as a "Gravel Bank," which land has been designated by the Montgomery Assessor's Office as two parcels, 1-350-8 and 1-236-88. (Answers of the Plaintiff, Donovan Brothers, Inc., to Defendants' First Set of Interrogatories, Answer No. 2 (a) & (b), attached hereto as Exhibit A).

2.	The Subject Premises has been used as a gravel pit on a continuous basis since at least 1955 through to the present, until issuance of the Cease and Desist Order. Both the prior owners of the property, the LaFond family, as well as Donovan Brothers, Inc., used the Subject Premises for gravel removal commencing 1955, as well as other individuals and entities. During the 1970's Donovan Brothers began to be the major entity removing gravel from the Subject Premises. At no time from 1955 to the present was the gravel operation stopped or abandoned by the LaFonds or Donovan Brothers. Selectman Charles Peckham, who resides on Carrington Road and who frequented Carrington Road since the 1950's, specifically testified that the Subject Premises was continuously used each year as a gravel pit since 1955. (Plaintiff Donovan Brothers, Inc.'s Supplemental and Amended Answers to Defendants' Interrogatories, Answer No.'s 13, 19, & 20, attached hereto as Exhibit B; and Plaintiff Donovan Brothers, Inc.'s Second Set of Supplemental Answers to Defendants' Interrogatories, Answer No. 4, attached hereto as Exhibit C; Affidavit of Gayle Donovan, attached hereto as Exhibit D; Affidavit of Sonny LaFond, attached hereto as Exhibit E; Affidavit of Fred Brewster, attached hereto as Exhibit F; Deposition Transcript of Selectman Charles Peckham, attached hereto as Exhibit O, pp. 37- 40, 78-85).

3.	There are at least six other persons who use and operate their properties as gravel banks in Montgomery without a permit, license or special permit, who have not been issued Cease and Desist Orders despite complaints having been made to the Town of Montgomery by their neighbors. At least two of these gravel banks are located on the same road as the Subject Premises, Carrington Road. These two properties are owned by Montgomery Town Selectman Charles Peckham, and Thomas Pomeroy, who is the Father-in-Law of Montgomery Town Selectman, Wayne Morse. There is another gravel bank located on Southampton Road; and another located on the southern portion of the Town. The Plaintiffs' gravel pit/earth removal operations on the Subject Premises is similarly situated in all relevant respects to those other

gravel pits/earth removal operations that have been and are presently operating within the Town of Montgomery. All such gravel pits are used for the commercial removal of gravel, sand and loam. (Exhibit A, Answer No. 14; Exhibit B, Answer No.'s 14 & 15; Exhibit O, pp. 6-17, 25-26, 41-42, 69-70; Deposition Transcript of Zoning Enforcement Officer Elwin Clark, attached hereto as Exhibit Q, pp. 63-64; Deposition Transcript of Zoning Board of Appeals Member Robert Pike, attached hereto as Exhibit R, pp. 9-10, 15; Deposition Transcript of Selectman Wayne Morse, attached hereto as Exhibit U, pp. 11-12, 15; Deposition Transcript of Dennis Page, attached hereto as Exhibit V, pp. 40-44).

4.  Despite the similar nature and use of the Subject Premises and those other gravel pit/earth removal operations in the Town of Montgomery, the Defendants selectively imposed a Cease and Desist Order upon the Plaintiffs, ordering the Plaintiffs to cease and desist from using the Subject Premises as a gravel pit. The Plaintiff is the only non-resident owner/operator of a gravel bank in Montgomery, and said Subject Premises is the only gravel bank in Montgomery to have ever been issued a Cease and Desist Order. (Exhibit B, Answer No. 15; Exhibit C, Answer No. 16; Exhibit O, pp. 51-52, 69, 73-75, 98-99; Exhibit Q, pp. 64-65; Deposition Transcript of Zoning Board of Appeals Member Joanne Hebert, attached hereto as Exhibit T, pp. 16, 20, 24-25).

5.  Other similarly situated gravel pit owners and operators have been and are continued to be allowed to operate in the Town of Montgomery without restriction or requirement for a permit or special permit under the Zoning Bylaw for the Town of Montgomery. When other similarly situated gravel pit owners had disputes with neighbors it was the practice and procedure of the Town of Montgomery through its Selectmen to mediate the disputes between the parties, and otherwise advise the neighbors that there are no ordinances or bylaws that control the operation of gravel pits in Montgomery. Hence, the dual standard and selective treatment imposed by the Defendant Building Inspector & Zoning Enforcement Officer, the Defendant Zoning Board of Appeals and Defendant Board of Selectmen deprived the Plaintiffs of equal protection of the

3

laws. (Exhibit B, Answer No.'s 15 & 16; Exhibit O, pp. 7-17, 41-42, 73-75; Deposition Transcript of Selectman Daniel Jacques, attached hereto as Exhibit P, p. 31; Montgomery Board of Selectmen Minutes of Meetings, attached hereto as Exhibit X, 2/10/05, 2/24/05, 4/21/05).

6.      The first Montgomery Zoning By-Law, enacted in 1956, specifically provided that "gravel, loam, sand and stone removal" was allowed on "Special Authorization" by the Board of Appeals. The amendment to the Montgomery Zoning By-law enacted in 1971 deleted gravel, stone and loam removal activities from its list of uses requiring "Special Authorization." Since the elimination of gravel pits as a specified use under the "Special Authorization" section of the Montgomery Zoning Ordinance in 1971, it has been the uninterrupted custom and policy of the Town of Montgomery for some 35 years that gravel pits were an unregulated and allowed use of property in Montgomery. (Exhibit B, Answer No.'s 13, 15; Montgomery Zoning By-law dated 1956, attached hereto as Exhibit G; Montgomery Zoning By-law dated 1971, attached hereto as Exhibit H; Exhibit O, pp. 26-30, 35-37, 41-42, 69, 75; Exhibit P, p. 31; Exhibit R, pp. 7, 15; Exhibit U, pp. 14-15; Exhibit X, 2/10/05, 2/24/05, 4/21/05).

7.      As a result of the Cease and Desist Order, Donovan Brothers has had to purchase gravel from Montgomery Town Selectman, Charles Peckham, and Thomas Pomeroy, who is the Father-in-Law of Montgomery Town Selectman, Wayne Morse. (Exhibit A, Answer No. 11; Exhibit O, pp. 17-20, 70; Exhibit U, pp. 11-12).

8.      As a result of the wrongful issuance of the Cease and Desist Order, the Plaintiff has suffered severe damages and economic losses, including having to turn down offers from other to purchase gravel from him. In addition, since the issuance of the Cease and Desist Order, the Plaintiff has had to purchase gravel at significantly increased price from said Charles Peckham and Thomas Pomeroy. As of November 16th, 2006, the Plaintiff's losses exceeded $276,000.00 as a direct result of the issuance of the Cease and Desist Order. (Exhibit B, Answer No. 11; Exhibit C, Answer No. 11).

4

9.      Selectman Daniel Jacques and one Mr. Dennis Page attempted to purchase the Subject Premises at the same time the Plaintiff, Donovan Brothers, Inc. negotiated and entered into its purchase and sale agreement with the Plaintiff, Elsie LaFond. Selectman Jacques advised Selectman Peckham of his plan to purchase the subject premises prior to the issuance of the Cease and Desist Order. When Selectman Jacques and Mr. Page failed in their attempt to purchase the property themselves, they worked in unison to frustrate the Plaintiffs' ability to continue to use the Subject Premises as a gravel pit. Selectman Jacques advised Selectman Peckham that Selectman Jacques, along with other neighbors, met with Mr. Donovan regarding his gravel pit operation on the Subject Premises, and that Selectman Jacques was unhappy about the outcome of that meeting. Selectman Jacques, acting in his capacity as a member of the Board of Selectmen, then obtained the advice of Town Counsel in his campaign against the Plaintiffs' continued operation of the Subject Premises, and during the same period of time covertly hired private counsel with Mr. Page in order to effectuate the same agenda. (Exhibit B, Answer No. 7; Exhibit C, Answer No.'s 15 & 16; Exhibit O, pp. 32-33, 43-44, 57-60, 63-64, 72; Exhibit P, pp. 9-14, 35; Exhibit V, pp. 9-21; Exhibit X, 12/23/04, 3/10/05, 4/21/05; Exhibit Y).

10.     Selectman Jacques and Mr. & Mrs. Page retained Attorney Costa to represent them regarding their campaign against the Plaintiffs' operation of the Subject Premises as a gravel pit. Attorney Costa and Selectman Jacques had gone to school together. Although Selectman Jacques was paying 50% of Attorney Costa's legal fees, Selectman Jacques was not publicly named as a complaining party on the Request for a Cease and Desist Order. Said Request for Cease and Desist Order specifically requested an Order only for that portion of the Subject Premises designated as 1-350-8, and specifically excluded from its request the portion of the Premises designated as 1-235-88. (Request for Cease and Desist Order, dated December 23, 2004, attached hereto as Exhibit I; Exhibit P, pp. 58-59; Exhibit Q, 68-69; Exhibit V, pp. 20-21, 47-51, 54-55, 60-61; Deposition Transcript of Joann Page, attached as Exhibit W, pp. 20-22).

11.     Prior to the delivery of the Request for a Cease and Desist Order to the Montgomery Zoning Enforcement Officer, the Board of Selectmen were aware that Mr. Dennis Page would be bringing a complaint to the Board of Selectmen regarding the use of the Subject Premises as a gravel pit.  Also prior to the delivery of the Request for the Cease and Desist, the Montgomery Board of Selectmen discussed the gravel pit operation at the Subject Premises at a public hearing, wherein Selectman Daniel Jacques, who is an abutter to the Subject Premises expressed his negative view of the gravel pit operation. (Exhibit O, pp. 21-24).

12.     The Building Inspector/Zoning Enforcement Officer is appointed by the Defendant, Board of Selectmen, and the Board of Selectmen act as the immediate supervisor over him. (Exhibit P, pp. 6-7; Exhibit Q, p. 9-10, 13).

13.     On or about January 13, 2005, the Defendant Zoning Enforcement Officer issued his Cease and Desist Order for the Subject Premises, prohibiting its continued use as a gravel pit.  Said Cease and Desist Order ordered the Plaintiff to cease using the entire Premises as a gravel pit, despite the fact that the letter requesting a Cease and Desist Order very specifically limited its request to only that portion of the Premises designated as Parcel 1-350-8, and specifically excluded from its request the portion of the Premises designated as 1-235-88.  The Zoning Enforcement Officer did not determine or otherwise have knowledge as to when the Subject Premises was first used as a gravel pit, in order to determine whether it was a grandfathered use.  The Zoning Enforcement Officer did not examine the Montgomery Zoning By-laws until after he had issued his Cease and Desist Order.  The Zoning Enforcement Officer did not do any research to determine whether the Subject Premises had a permit or license from the town to operate a gravel pit. (Cease and Desist Order dated January 13, 2005, attached hereto as Exhibit J; Exhibit Q, pp. 40-42, 47-48, 50).

14.     The day after the Montgomery Zoning Enforcement Officer served notice of his Cease and Desist Order regarding the Subject Premises, the Zoning Enforcement Officer met with

Selectman Charles Peckham at a time when Selectman Peckham was working in his own gravel pit. During said meeting the Zoning Enforcement Officer advised Selectman Peckham that he had issued the Cease and Desist Order regarding the Subject Premises, and that he was uneasy about issuing the Cease and Desist Order. In particular, the Zoning Enforcement Officer advised Selectman Peckham that he was uneasy about "the way it was handled, that it was never handled that way in the past, and why give it to one pit and not the rest of the pits?" (Exhibit O, pp. 53-54).

15. During a meeting held by the Montgomery Board of Selectmen, the Selectmen discussed the Subject Premises, wherein Selectman Wayne Morse stated that he "had a problem with some of the language on the cease and desist and such." (Exhibit O, p. 49).

16. During meetings held by the Montgomery Board of Selectmen, Selectman Daniel Jacques expressed his strong opinion in favor of the Cease and Desist Order, that he was upset about the gravel pit operation on the Subject Premises, and that he didn't want the pit there. (Exhibit O, pp. 56-57).

17. Selectmen Jacques was aware that the Subject Premises was used for the removal of gravel at the time he purchased his own, abutting property some 13 years ago, and observed the Subject Property's use as a gravel pit during said 13 year period that he was an abutter. (Exhibit P, p. 22).

18. On or about February 9, 2005, the Plaintiffs duly filed their appeal of the Cease and Desist Order, on the grounds that the Subject Premises had been used as a gravel pit for years prior to the issuance of the Cease and Desist Order without any notice of alleged violation, and that therefore the Cease and Desist Order was invalid for being based on an error of law, was not substantiated by the facts, was based on a legally untenable ground and is otherwise not in accordance with law, and was unreasonable, arbitrary and capricious, etc. (Notice of Appeal dated February 9, 2005, attached hereto as Exhibit K).

19.     The Montgomery Zoning Board of Appeals members are appointed by the Defendant, Board of Selectmen. (Exhibit P, pp. 6-7; Exhibit R, p. 6, 15-16; Deposition Transcript of Joseph Fontaine, attached hereto as Exhibit S, pp. 7, 34).

20.     The complaint against the use of the Subject Premises as a gravel pit was the first such complaint regarding a gravel pit presented to the Zoning Board of Appeals. No other such complaints were made because, "the select board, one of the people owns a gravel bank, and the other one his father-in-law owns the gravel bank, so you know." The Zoning Board of Appeals was advised at the Hearing held on the Cease and Desist on March 15, 2005, that Board of Selectman Member Daniel Jacques was an abutter to the Subject Premises, and that he had unsuccessfully attempted to purchased the Subject Premises. (Exhibit T, pp. 21-22).

21.     At the Hearings held before the Montgomery Zoning Board of Appeals on Plaintiffs' appeal of the Cease and Desist Order, held on March 15, 2005 and April 14, 2005, the Plaintiffs through their counsel presented their case that the use of the Subject Premises as a gravel pit commenced prior to the existence of any town by-laws, and that therefore the pit was exempt from control. Evidence of the Subject Premises prior use as a gravel pit included documentation of cancelled checks from the 1970's. The Plaintiffs through their counsel also presented their case that the Montgomery Zoning By-Law, as amended, provided that gravel pits were an unregulated and allowed use of property in Montgomery. Selectman Charles Peckham spoke and provided his evidence at both Hearings before the Montgomery Zoning Board of Appeals regarding his years living on Carrington Road. (Affidavit of Roland Bernier, attached hereto as Exhibit L; Affidavit of Paul Senatore, attached hereto as Exhibit M; Exhibit O, pp. 65-66).

22.     At the Hearings held before the Montgomery Zoning Board of Appeals on Plaintiffs' appeal of the Cease and Desist Order, held on March 15, 2005 and April 14, 2005, Selectman Jacques presented his opposition to the lifting of the Cease and Desist Order regarding the Subject Premises. (Exhibit O, p. 66).

23.     Prior to the Zoning Board of Appeals hearing and decision of April 14, 2005, certain abutters of the Subject Premises mailed a letter directly to each of the Zoning Board Members, wherein said abutters presented their case in support of the Cease and Desist Order.  However, said letter was not presented at the at the Board of Appeals hearings, nor publicly discussed at the Board of Appeals Hearings.  (Exhibit S, 19-20, 32-34).

24.     Montgomery Board of Appeals Member, Joseph Fontaine, who voted to uphold the Cease and Desist Order, mistakenly believed that the Request for Cease and Desist Order letter dated December 23, 2004, was a letter from a law firm that the Zoning Enforcement Officer went to for guidance in issuing his Cease and Desist Order.  (Exhibit I; Exhibit S, pp. 11, 28-29).

25.     After the Montgomery Zoning Board "heard testimony from both sides" at the first meeting held on March 15, 2005, and after "several people were heard giving more input" at the second meeting held on April 14, 2005, the Montgomery Zoning Board voted, 2 to 1, to uphold the Cease and Desist Order.  (Montgomery Zoning Board of Appeals Decision dated April 18, 2005, attached hereto as Exhibit N).

                                                            The Plaintiffs,
                                                            DONOVAN BROS, INC., and
                                                            ELSIE M. LAFOND,


                                                            By: S/    *Frank E. Antonucci*
                                                            FRANK E. ANTONUCCI, ESQ.
                                                            ANTONUCCI & ASSOCIATES
                                                            83 State Street, Suite 203
                                                            Springfield, MA  01103
                                                            Tel: (413) 737-4667
                                                            Fax: (413) 731-0602
                                                            BBO# 020260

CERTIFICATE OF SERVICE

    I, Frank E. Antonucci, Esq., do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those indicated as non-registered participants on January 16, 2007.

    S/ *Frank E. Antonucci*
FRANK E. ANTONUCCI, ESQ.
ANTONUCCI & ASSOCIATES
83 State Street, Suite 203
Springfield, MA  01103
Tel: (413) 737-4667
Fax: (413) 731-0602
BBO# 020260